C. Brooks Cutter, SBN 121407
Ian Hunter, SBN 261771
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-448-9800
Facsimile: 916-669-4499
Email: bcutter@kcrlegal.com
Email: ihunter@kcrlegal.com

Jeffrey A. Klafter
Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: 914-934-9200
Facsimile: 914-934-9221
Email: jak@klafterolsen.com
Email: slesser@klafterolsen.com
Email: frudich@klafterolsen.com

Attorneys for Plaintiff
CATHERINE WILKIE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE WILKIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>Defendants. | Case No. 2:10-CV-01451-FCD-GGH<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER**<br><br>Date: September 10, 2010<br>Time: 10:00 a.m.<br>Courtroom: 2, 15th Floor<br>The Honorable Frank C. Damrell, Jr.<br><br>Action Filed: June 11, 2010<br>Trial Date: None Set |

**I.      INTRODUCTION**

Defendant's Motion to Transfer should be denied, because the parties and claims in this

-1-

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

case are substantially different from the parties and claims in the *Rindfleisch*[1] action, and because the equities favor denial of the motion to transfer. Plaintiff seeks to pursue California state law wage and hour claims on behalf of a class of California residents. Plaintiff also seeks to pursue FLSA claims as a nationwide collective action. Defendant seeks to transfer this action to the Eastern District of New York (and from there to the Northern District of Georgia),[2] using the *Rindfleisch* action as justification for doing so. However, while the FLSA collective action claims in the present action are somewhat similar to those in the *Rindfleisch* action, it would be premature to determine to what extent those claims overlap, since neither case has moved to the collective action certification stage. Moreover, the *Rindfleisch* action makes no California state law claims and does not seek to represent a California class. Plaintiff's California class claims raise issues unique to California wage and hour law and are unrelated to any of the claims in the *Rindfleisch* action. The locus and proper place for adjudicating these claims is not in New York or Atlanta, but in this Court.

## II. PROCEDURAL HISTORY

### A. The *Wilkie* Action

Plaintiff Catherine Wilkie filed the present action in this Court on June 11, 2010. Plaintiff sought to represent the following California class:

> [A]ll persons who were, are, or will be employed by Defendant in California, as clinical associates, including but not limited to registered nurse case managers and similarly situated employees holding comparable positions with different titles (the "California Class"), at any time within the four years prior to the date of the filing of this complaint through the date of the final disposition of the action (the "California Class Period"), and who were not, are not, or will not, be paid for all hours worked by them, as well as for overtime pay in the amount of time and one half of their regular rate of pay for hours over 40 they worked in a workweek pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 226, 510, 1174, 1174.5 and 1194, Cal. Wage Order No. 4.

On behalf of this California class, Plaintiff made claims against Defendant for: (1) failure to pay overtime as required by California Labor Code sections 510 and 1194; (2) willful failure to pay

---

[1] *Rindfleisch, et al. v. Gentiva Health Services, Inc.*, Case No. CV10-2111 (E.D.N.Y.)
[2] As Defendant notes in its Memorandum of Points and Authorities at fn. 1, Defendant "intends to bring a motion in the *Rindfleisch* action to have that case transferred to the Northern District of Georgia."

-2-

for all hours worked and failure to pay statutory wages under California Labor Code section 201-203; (3) knowing failure to provide timely and accurate itemized statements and failure to pay statutory wages under California Wage Order No. 4 and California Labor Code sections 226, 1174 and 1174.5; (4) failure to provide meal and rest breaks and failure to pay statutory wages under California Wage Order No. 4 and California Labor Code sections 218.5, 226.7 and 512; and (5) unlawful and unfair conduct prohibited by California Business and Professions Code section 17200, *et seq.*

Plaintiff also made claims for willful failure to pay overtime and failure to keep records with respect to each of its employees sufficient to determine wages in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 201(a)(1), 211(c) and 215(a) on behalf of a proposed collective action, with membership defined as follows:

> [A]ll persons who are or were formerly employed by Defendant in the United States at any time since June 11, 2007 to the entry of judgment in this case (the "Collective Action Period"), as clinical associates, including but not limited to registered nurse case managers, and similarly situated employees holding comparable positions with different titles, who did not receive compensation for all hours worked and did not receive proper overtime wages.

**B.     The *Rindfleisch* Action**

The five individual *Rindfleisch* plaintiffs filed their action in the Eastern District of New York on May 10, 2010.  They sought to pursue a collective action for misclassification and failure to pay overtime under the FLSA on behalf of the following group of individuals:

> All visiting health care providers who were, are or will be employed by Defendant Gentiva Health Services, Inc. nationwide during the period of three years prior to the date of commencement of this action through the date of judgment in this action, who have neither been properly compensated for all of their hours worked, nor paid time and one-half for hours in excess of forty (40). *Rindfleisch* Complaint, ¶ 6, page 2.

The *Rindfleisch* plaintiffs also sought certification of two derivative state class actions under Rule 23, one on behalf of New York "visiting health care providers," and the other on behalf of North Carolina "visiting health care providers." Both Rule 23 putative classes sought state law overtime remedies for misclassification under the FLSA.

The *Rindfleisch* action did not make any California state law claims, did not seek any California state law remedies, and did not seek to represent a California class under Rule 23.

-3-

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

### III. ARGUMENT

Under the "first-to-file rule," a district court may exercise the discretion to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). The threshold requirements of the rule are "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Id.* at 625-26. If an action meets all three requirements, the district court may, in its discretion, transfer, stay or dismiss the action. *Id.* at 622. However, in the interests of equity, the court has broad discretion to disregard the first-to-file rule. *Id.* at 622, 628.

Plaintiffs concede that the present action was filed approximately one month after the *Rindfleisch* action and do not dispute the first requirement of the first-to-file rule. However, neither the parties nor the issues in this action are sufficiently coextensive with those in the *Rindfleisch* action. Moreover, even to the extent that one of Plaintiff's claims herein (the FLSA claim) is similar to such a claim made in the *Rindfleisch* action, the interests of equity favor this Court retaining jurisdiction over those claims.

#### A. The Parties Are Substantially Different

In this action, Plaintiff seeks to represent two distinct groups of individuals. The first is a nationwide collective action on behalf of "clinical associates" employed by Defendant and denied overtime under the FLSA. The second is a class of California "clinical associates" employed by Defendant and denied wages, meal and rest breaks, separation pay, and itemized wage statements under California law.[3] Plaintiff's complaint defines "clinical associates" as "including but not limited to registered nurse case managers, and similarly situated employees holding comparable positions with different titles."

---

[3] It is also of note that Plaintiff's California class extends back four years from the date Plaintiff filed her complaint (i.e., back to June 11, 2006), whereas the proposed collective action in *Rindfleisch* would extend back (at best) three years from the date collective action members opt in. Thus, Plaintiff's California class will include a substantial number of individuals who could never be members of the *Rindfleisch* proposed collective action, regardless of any other similarities in the parties and claims.

-4-

The *Rindfleisch* plaintiffs seek to represent three groups of individuals. The first is a nationwide collective action on behalf of "visiting health care providers" employed by Defendant and denied overtime under the FLSA. The second is a class of New York "visiting health care providers" employed by Defendant and denied overtime under the FLSA and New York law. The third is a class of North Carolina "visiting health care providers" employed by Defendant and denied overtime under the FLSA and North Carolina law. The *Rindfleisch* complaint defines "visiting health care providers" as "Registered Nurses ('RNs'), Physical Therapists and Occupational Therapists."

While Plaintiff concedes that Plaintiff's definition of "clinical associates" under Plaintiff's proposed FLSA collective action appears to overlap at least in part with the *Rindfleisch* complaint's definition of "visiting health care providers," it is not clear to what extent the two groups actually overlap. For example, Licensed Vocational Nurses ("LVNs") would appear to be included within Plaintiff's proposed collective action but not within the *Rindfleisch* proposed collective action. Likewise, Nursing Assistants, Physicians Assistants, Monitor Technicians and other related positions would likely fit within Plaintiff's definition but not the *Rindfleisch* definition.

No discovery has been conducted in either case, nor has certification of a collective action been sought or granted in either case. Thus, it cannot be said, based purely on the pleadings, that the proposed FLSA collective actions are sufficiently coextensive to satisfy the second requirement of the "first-to-file" rule. The mere happenstance of some possible overlap should not remove this case from this forum.

Moreover, even if the Court determines that the FLSA proposed collective actions in the two cases are sufficiently similar, Plaintiff's California class is *distinct* from either FLSA collective action and from the *Rindfleisch* action's New York and North Carolina classes.

In the *Rindfleisch* action, the New York and North Carolina classes are essentially derivative subclasses of the larger FLSA collective action. They are defined to include New York and North Carolina employees of defendant who were misclassified as exempt under the FLSA.

Plaintiff's California class is *not* derivative of Plaintiff's FLSA collective action.

-5-

1  Members of Plaintiff's California class are those misclassified as exempt under *California state*
2  *law*. It is well established that the inquiry into exemption is not identical under the FLSA and
3  California state law. Indeed, California state law is designed to be *more protective* of employees
4  than Federal law. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 795 (1999) ("The IWC's
5  wage orders, although at times patterned after federal regulations, also sometimes provide greater
6  protection than is provided under federal law in the Fair Labor Standards Act (FLSA) and
7  accompanying federal regulations."). Thus, there are many instances where employees would be
8  properly classified as exempt under the FLSA but would still be non-exempt employees under
9  California law.

10  Defendant's attempt to elide Plaintiff's California class with the FLSA collective action
11  ignores this crucial distinction. Plaintiff's California class is dissimilar from Plaintiff's FLSA
12  collective action and the *Rindfleisch* collective, and is entirely divorced from the New York and
13  North Carolina classes in *Rindfleisch*.

14  **B.    The Issues Are Substantially Different**

15  Plaintiff does not dispute that some of the issues to be determined in her FLSA collective
16  action will be similar to the issues to be determined in the *Rindfleisch* collective action.
17  However, until discovery is commenced and the cases move toward certification of the collective
18  actions, the extent of that similarity is unclear.

19  Moreover, the issues to be determined in Plaintiff's California class action are entirely
20  distinct from the FLSA inquiry. As noted above, California exemption law is more protective of
21  employees than FLSA exemption law. *Ramirez, supra*, 20 Cal. 4th at 795; *see, also Nordquist v.*
22  *McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995) ("California's professional
23  employee exemption is narrower than that in the FLSA, and the administrative employee
24  exemption is somewhat different.").

25  Plaintiff has alleged violations and seeks remedies unique to California law. Thus, the
26  threshold Rule 23 inquiries into commonality, typicality and predominance as to Plaintiff's
27  California class will be distinct from any inquiries related to the FLSA. Moreover, because the
28  exemption analysis is different under California law, and because Plaintiff alleges five unique

-6-

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER

California state law causes of action, the issues relating to liability as to the California class are distinct from any issues relating to the FLSA. Lastly, because each of the five unique California causes of action is tied to unique California remedies, the damages analysis as to the California class is distinct from that under the FLSA.

Defendant makes the overreaching argument that, because "the *Rindfleisch* action presently alleges violations of the wage and hour laws of the States of New York and North Carolina, ... it is entirely proper that the district court assigned to the *Rindfleisch* action also adjudicate wage and hour claims brought under California state law." Memorandum of Points and Authorities in Support of Defendant Gentiva Health Services, Inc.'s Motion to Transfer at 8:10-13. Defendant offers no authority for this proposition, and it flies in the face of the "first-to-file" rule itself. There is *no overlap* between the identity of Plaintiff's California class and that of the *Rindfleisch* complaint's New York and North Carolina classes. Nor do the legal issues overlap. The New York and North Carolina classes are premised on FLSA misclassification and on failure to pay overtime under New York and North Carolina law. Plaintiff's California class is premised on misclassification under California Wage Order No. 4 and on failure to pay overtime, failure to provide meal and rest periods, failure to pay waiting-time penalties, failure to provide itemized wage statements, and unfair competition, all under California law. Because the second and third requirements of the first-to-file rule are not met as to Plaintiff's California class, those claims cannot be transferred to the Eastern District of New York.

### C. The Interests of Equity Favor Denying the Motion to Transfer

Even if Defendant could satisfy the three requirements of the first-to-file rule here, the first-to-file doctrine is discretionary and the Court may disregard it in the interests of equity. *Alltrade*, 946 F.2d at 622. The Court's discretion to disregard the doctrine is broad. *Id.* at 628. Here, the interests of equity weigh in favor of this Court retaining jurisdiction and denying the motion to transfer.

First, five of Plaintiff's six causes of action herein are California state law causes of action on behalf of a California class. As noted above, these causes of action raise issues unique to California law and not at issue in the *Rindfleisch* action. This Court is better positioned to

adjudicate those California claims than the court in the *Rindfleisch* action, which likely is less familiar with California law and has no relationship to the California plaintiff or the proposed California class herein.

Indeed, the connection of the majority of Plaintiff's claims to this forum is likely the reason Defendant has not moved to have this case and the *Rindfleisch* action centralized as a Multi-District Litigation ("MDL") proceeding pursuant to 28 U.S.C. § 1407. During the past year, the Judicial Panel on Multi-District Litigation has refused to consolidate FLSA and state law actions because, in the view of the Judges on the Panel, the issues involved in those cases are often local in nature. *See, e.g. In re: Rite Aid Corp. Wage and Hour Employment Practices Litigation*, 655 F.Supp.2d 1376, 1377 (J.P.M.L. 2009) ("Discovery is likely to require an individualized, factual inquiry into the job duties performed by each employee, and the plaintiffs assert violations of various state wage laws, which have differing provisions."); *In re CVS Caremark Corp. Wage and Hour Employment Practices Litigation*, 684 F.Supp.2d 1377, 1379 (J.P.M.L. 2010).

Second, transfer or stay of Plaintiff's FLSA action will prejudice Plaintiff and the proposed collective action members. No discovery has been taken in the *Rindfleisch* action, and no collective action has been certified. Indeed, Defendant has conceded that it has moved to transfer the *Rindfleisch* action to the Northern District of Georgia, and that motion is to be heard on November 5, 2010. Given the unsettled procedural posture of the *Rindfleisch* action, it is unclear when discovery will be commenced or certification of the FLSA collective action will be sought. Plaintiff in the present case is prepared to move forward with discovery, and thereafter certification of the proposed collective action. Because the statute of limitations for members of a proposed FLSA collective action runs until the class members opt in to the action, delay in the certification process can cause putative collective action members to lose their claims. Furthermore, simply because the *Rindfleisch* plaintiffs propose to represent a nationwide FLSA class does not mean that such a class will be certified. *See Adoma v. University of Phoenix*, __ F. Supp. 2d __, 2010 WL 1797263 (E.D. Cal., May 3, 2010) (Karlton, J.) (denying motion to transfer, even though all three requirements of the first-to-file rule were satisfied, because of the

possibility that certification of the pending first-filed FLSA collective action would be denied or would be limited to Pennsylvania residents and that "the rights of collective members in every other jurisdiction may be seriously infringed").

As Judge Karlton noted in denying the motion to transfer in *Adoma*:

> The court is persuaded that the equities in this case tip in favor of an exception to the first-to-file rule. Specifically, the *Sabol* case has not advanced even to certification. Further, plaintiff brings additional theories of recovery. Moreover, the fact that plaintiff also seeks relief under California state law, which requires entirely different calculations for overtime compensation, demonstrates that judicial resources will not be significantly conserved [by transfer].

As noted above and as the JPML has recognized, the most proper venue for state law claims such as Plaintiff's herein is within the state whose laws are invoked. Therefore, to deny Plaintiff the ability to pursue her California claims in this Court would prejudice Plaintiff.

### D. There is No Risk of Conflicting Results with Plaintiff's California Claims

As to Plaintiff's FLSA claims, there is no present risk of conflicting results, because neither case has moved to the collective action certification stage. If whichever court ends up handling the *Rindfleisch* action determines that certification of a FLSA collective action is appropriate, the parties in the present case could revisit stay or transfer of Plaintiff's FLSA collective action claims at that time. At that time, the parties and the Court would be better-positioned to determine the extent of overlap and any risk of conflict between Plaintiff's proposed collective action and the *Rindfleisch* plaintiffs' proposed collective action.

However, regardless of the outcome of the FLSA collective actions, there is no possibility of Plaintiff's California class conflicting with any portion of the *Rindfleisch* action. As noted above, Plaintiff's California class claims have no corollary in the *Rindfleisch* action and raise issues of California law distinct from any issues of law under the FLSA. Thus, regardless of the disposition of Plaintiff's FLSA claims under the present motion, there is no reason to stay or transfer Plaintiff's California class claims.

### E. Practical Efficiency can be Served by Less Draconian Measures than Transfer or Stay

The resources of the parties and the Court can easily be conserved via less draconian measures than transfer or stay of any or all of Plaintiff's claims herein. *In re Eli Lilly and Co.*

*(Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (J.P.M.L.1978)

> We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery. For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts.

*Id.* Plaintiff's counsel is willing and able to coordinate discovery with defense counsel and with counsel for the *Rindfleisch* plaintiffs to the extent the subjects of discovery overlap. Ultimately, that is precisely the route the JPML has endorsed in recent cases involving mixed FLSA and state law claims.[4] *See, e.g. In re: Rite Aid*, 655 F. Supp. 2d at 1377 ("Counsel in all actions can avail themselves of alternatives to transfer that may minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings."); *In re CVS*, 684 F. Supp. 2d at 1380.

## IV.   CONCLUSION

Based on all of the foregoing, Plaintiff respectfully requests that the Court DENY Defendant's Motion to Transfer.

DATED: August 27, 2010                                KERSHAW, CUTTER & RATINOFF, LLP


By: /s/_____
C. BROOKS CUTTER
*Attorneys for Plaintiff*

KLAFTER OLSEN & LESSER LLP


By: /s/_____
SETH R. LESSER
*Attorneys for Plaintiff*

---

[4] It is also the route Plaintiff's counsel, Klafter Olsen and Lesser, LLP, has taken on several occasions in such cases.

-10-

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER