1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   CATHERINE WILKIE, individually
     and on behalf of all others
12   similarly situated,
                                        CIV. NO. 10-1451 FCD/GGH
13          Plaintiff,

14      v.                              <u>MEMORANDUM AND ORDER</u>

15   GENTIVA HEALTH SERVICES, INC.,

16          Defendant.

17                        ----oo0oo----

18      This matter is before the court on defendant Gentiva Health

19   Services' ("defendant" or "Gentiva") motion to transfer plaintiff

20   Catherine Wilkie's ("plaintiff" or "Wilkie") Federal Labor and

21   Standards Act ("FLSA") claim and various state law claims[1] to the

22   same federal district court in which the "first-filed action" is

23   _____

24         [1]    Plaintiff alleges claims for violation of the
     California Labor Code § 201 *et seq.* for: (1) misclassification as
25   exempt from overtime pay and failure to pay overtime; (2) willful
     failure to pay wages due within the time specified by the Code;
26   (3) violation of California Wage Order No. 4 for knowingly and
     intentionally failing to provide timely, accurate, itemized wage
27   statements including request for an injunction and damages;
     (4) failure to give proper rest and meal breaks; and (5)
28   violation of California's Business & Professions Code § 17200 *et
     seq.*

                                   1

1  pending.[2]  Plaintiff asserts her claims for relief in this action

2  as a putative nation- and California-wide class action against

3  Gentiva, plaintiff's former employer.

4      By its motion, defendant moves to transfer plaintiff's

5  complaint under the "first-to-file rule," on the ground

6  plaintiff's claims are the subject of the Rindfleisch action.

7  Plaintiff opposes the motion, arguing the parties and claims are

8  not substantially similar in the two actions and other equitable

9  factors militate against transfer under the first-to-file rule.

10     For the reasons set forth below,[3] the court DENIES

11  Gentiva's motion; plaintiff's complaint is not properly

12  transferred under the first-to-file rule.

13                          **BACKGROUND**

14     Gentiva is a corporation which provides home health services

15  in various parts of the United States.  (Def.'s Answer, ¶ 29).

16  **1.  Rindfleisch Action**

17     On May 10, 2010, plaintiffs Lisa Rindfleisch, Tiffany

18  Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes

19  filed a complaint against Gentiva in the United States District

20

21     [2]  On May 10, 2010, five individual plaintiffs commenced a
22  FLSA collective action and New York and North Carolina state law
   class action against Gentiva in the United States District Court
23  for the Eastern District of New York, entitled Rindfleisch, et
   al. v. Gentiva Health Services, Inc., No. CV10-2111 (E.D.
24  N.Y.)("Rindfleisch").
       There, a status conference was held on July 8, 2010.
25  Gentiva filed its Answer on July 9, 2010, and subsequently moved
   to transfer the case to the Northern District of Georgia.  The
26  court set the motion for hearing on November 5, 2010.  Briefing
   on the motion will be completed by September 23, 2010.

27     [3]  Because oral argument will not be of material
   assistance, the court orders this matter submitted on the briefs.
28  E.D. Cal. L.R. 230(g).

                               2

1   Court, Eastern District of New York, on behalf of all "visiting
2   health care providers" who were, are, or will be employed by
3   Gentiva nationwide, during the period of three years prior to the
4   date of commencement of the action through the date of judgment
5   in the action.  (Gentiva's Request for Judicial Notice [Docket
6   #13], filed July 23, 2010 ["RJN"], Ex. A, ¶ 6).  The <u>Rindfleisch</u>
7   plaintiffs' definition of "visiting health care providers"
8   includes registered nurses, physical therapists, and occupational
9   therapists.  (<u>Id.</u> at Ex. A, ¶ 3).  They assert a nationwide class
10  action under FLSA based on Gentiva's alleged policy of paying its
11  visiting health care providers pursuant to an unlawful hybrid
12  compensation plan, which includes "per visit" payments for some
13  work and hourly pay for other work.  (<u>Id.</u>)

14      The <u>Rindfleisch</u> plaintiffs also seek certification of two
15  state law, sub-classes under Federal Rule of Civil Procedure 23,
16  one on behalf of North Carolina visiting health care providers
17  and one on behalf of New York visiting health care providers.
18  (<u>Id.</u> at Ex. A, ¶¶ 9-13).  Both sub-classes seek respective state
19  law overtime remedies for misclassification of employees.  (<u>Id.</u>)

20  **2.   <u>Wilkie</u> Action**

21      On June 11, 2010, plaintiff filed the instant action against
22  Gentiva.  (<u>Id.</u> at Ex. B.)  Like in <u>Rindfleisch</u>, plaintiff also
23  alleges a FLSA claim, on behalf of a nation-wide class of
24  similarly situated persons, asserting that Gentiva maintains a
25  policy of paying employees pursuant to an unlawful "mixed per
26  visit and hourly compensation scheme."  (<u>Id.</u> at Ex. B, ¶ 1).
27  Plaintiff contends that by compensating employees in such a
28  manner defendant fails to pay plaintiff and the class for all

3

hours worked, as well as overtime pay.  Plaintiff's class

definition for her FLSA claim is as follows:

> [A]ll persons who are or were formerly
> employed by Defendant in the United
> States at any time since June 11, 2007
> to the entry of judgment in this case,
> as clinical associates, including but
> not limited to registered nurse case
> managers, and similarly situated
> employees holding comparable positions
> with different titles. (<u>Id.</u> at Ex. B,
> ¶¶ 1,18).

Plaintiff also alleges state law claims for failure to (1)

pay overtime, (2) pay for all hours worked, (3) provide timely and

accurate itemized statements, and (4) provide meal and rest breaks

in violation of the California Labor Code ("Labor Code") § 201, *et*

*seq.,* and (5) for violation of California Business and Professions

Code § 17200, *et seq.*  Plaintiff seeks to represent the following

California class:

> [A]ll persons who were, are, or will be
> employed by Defendant in California, as
> clinical associates, including but not
> limited to registered nurse case
> managers and similarly situated
> employees holding comparable positions
> with different titles (the 'California
> Class'), at any time within four years
> prior to the date of the filing of this
> complaint through the date of the final
> disposition of the action. (<u>Id.</u> at Ex.
> B, ¶¶ 4, 53-79).

Defendant moves to transfer this case to the district court

in which the <u>Rindfleisch</u> action is pending.[4]

---

[4] Defendant requests either transfer to New York or
Georgia, depending on the status of the <u>Rindfleisch</u> motion.  The
motion to transfer in that case is not set to be heard until
November 2010; as such, any transfer at this point would be to
New York.  However, for the reasons set forth below, the court
finds that transfer of this case is not warranted.

**ANALYSIS**

The first-to-file rule is a recognized legal doctrine regarding duplicative lawsuits in which "[t]he principles of comity allow a district court to decline jurisdiction over an action where a complaint involving the same parties and issues has already been filed in another district." <u>Barapind v. Reno</u>, 225 F.3d 1100, 1109 (9th Cir. 2000). Its purpose is to "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." <u>Church of Scientology of Cal. v. U.S. Dep't of the Army</u>, 611 F.2d 738, 750 (9th Cir. 1979).

However, the first-to-file rule is not a "rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 95 (9th Cir. 1992). The United States Supreme Court has explicitly noted that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solutions" to the problems of duplicative litigation and the relevant factors are equitable in nature. <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183 (1952).

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." <u>Alltrade, Inc. v. Uniweld Products, Inc.</u>, 946 F.2d 622, 625-626 (9th Cir. 1991). If this action meets the requirements of the first-to-file rule, the court has the discretion to transfer,

stay, or dismiss the action.  Id. at 622.  The Rindfleisch and

Wilkie plaintiffs' various claims present distinct factual and

legal issues, which are addressed below, meriting the denial of

Gentiva's motion.

**1.    Chronology of the Actions**

The parties do not dispute that the New York action was filed

first; that action was filed on May 10, 2010, and this action was

filed on June 11, 2010.

**2.    Similarity of the Parties**

Defendant contends that the parties are substantially similar

because both the Rindfleisch and Wilkie lawsuits set out

collective actions under FLSA[5] on behalf of a nation-wide class

consisting of similar employees.  Further, defendant maintains

that the ancillary state law classes do not affect the similarity

requirement because despite the California sub-class which exists

only in Wilkie, there is still "substantial overlap" between all

the parties in both actions.  Plaintiff asserts, to the contrary,

that at this point in the litigation it is uncertain whether the

two nation-wide classes are substantially similar.  Additionally,

plaintiff contends Wilkie's California plaintiffs and

Rindfleisch's New York and North Carolina plaintiffs are distinct

from each other, making the parties as a whole dissimilar.

The first-to-file rule does not require strict identity of

the parties, but rather substantial similarity.  Inherent.com v.

---

[5]    Multi-plaintiff actions under the FLSA are governed by
29 U.S.C.A. § 216(b) and are termed collective or representative
actions rather than class actions. Despite the difference in
terminology, collective actions are similar to class actions, in
that they address a similar alleged wrong suffered by multiple,
similarly situated plaintiffs.

6

1  Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).

2  Substantial similarity of the parties is determined by comparing

3  the proposed classes as they currently stand.  Gardner v. GC

4  Services, LP, No. 10-CV-997-IEG (CAB), 2010 WL 2721271, *5 (S.D.

5  Cal. July 6, 2010) ("the focus is on the composition of the two

6  classes at this point."); accord Dubee v. P.F. Chang's China

7  Bistro, Inc., No. C 10-01937 WHA, 2010 WL 3323808, *2 (N.D. Cal.

8  August 23, 2010).

9      While Gentiva is a defendant in both actions, plaintiff

10 correctly points out that at this stage in the litigation, it is

11 not apparent whether the nation-wide classes are substantially

12 similar.  On the surface, and as conceded by plaintiff, the two

13 classes appear similar.  The Rindfleisch nation-wide class

14 consists of "Registered Nurses ("RNs"), Physical Therapists, and

15 Occupational Therapists (collectively, 'visiting health care

16 providers')."  (Def.'s RJN at Ex. A, ¶ 3.)  The instant action's

17 class includes all persons who are, or were, formerly employed by

18 defendant as "clinical associates," *including but not limited to*

19 registered nurse case managers and similarly situated employees

20 holding comparable positions with different titles.  (Id. at Ex.

21 B, ¶ 2.)

22     Plaintiff's definition of "clinical associates" is similar to

23 the Rindfleisch plaintiffs' "healthcare providers;" but

24 significantly, plaintiff's definition, here, may be broader.

25 However, with no discovery conducted in either case, it is yet to

26 be seen whether the two actions substantially overlap.  As

27 plaintiff argues, some employees included in the instant action

28 may not ultimately be included in the Rindfleisch action.  For

7

1  example, it is unclear whether licensed vocational nurses,

2  physicians assistants, and monitor technicians which likely fit

3  under plaintiff's class definition, also fit within the

4  Rindfleisch class.  As such, the court cannot find at this

5  juncture that substantial similarity exists between the nation-

6  wide classes in the two actions.

7       Additionally, plaintiff's California class is separate and

8  distinct from any and all Rindfleisch sub-classes.  See, e.g.,

9  Gardner v. GC Services, LP, No. 10-CV-997-IEG (CAB), 2010 WL

10  2721271, *5 (S.D. Cal. July 6, 2010) (finding "no overlap at all,

11  much less 'substantial overlap'" where a later-filed action

12  represented a California putative class, while the earlier-filed

13  action excluded all California employees from the putative class).

14  Indeed, no subclass of California litigants, alleging California

15  state law claims, currently exists in the Rindfleisch action so

16  there can be no similarity of the parties as to the state classes.

17  Thus, considering all of the classes at issue, the court cannot

18  find a similarity of the parties in the two actions.

19  **3.   Similarity of the Issues**

20       Defendant contends that the FLSA claims in both actions are

21  substantially similar.  Additionally, defendant asserts while the

22  particulars of California law differ from the provisions of FLSA,

23  still both claims concern the same core alleged violation, and

24  thus, the claims are substantially similar.  Finally, defendant

25  argues the state law claims in both actions need not be compared

26  because, if transferred, any federal district court is capable of

27  interpreting and applying California law.  On the other hand,

28  plaintiff argues that while the FLSA claims in both actions appear

1 similar, <u>Wilkie</u>'s California state law claims are distinct from

2 the <u>Rindfleisch</u> action's FLSA claim.  Further, plaintiff contends

3 that there is no overlap between the two action's state law

4 claims.

5      With respect to the issues, courts also routinely recognize

6 that they need not be identical in the two actions.  Substantial

7 similarity is sufficient.  <u>Adoma v. University of Phoenix</u>,

8 _F.Supp.2d_, 2010 WL 1797263, *5 (E.D. Cal. May 3, 2010).  Here,

9 it is likely that the FLSA issues in this action will be similar

10 to those of the <u>Rindfleisch</u> action.  Both plaintiffs allege that

11 Gentiva maintained a policy of paying its employees pursuant to an

12 unlawful hybrid compensation plan.  (<u>Compare</u> Def.'s RJN at Ex. A,

13 ¶ 3 with Ex. B, ¶ 1.)

14      On the other hand, plaintiff's California law claims are

15 dissimilar from both the <u>Rindfleisch</u> action's FSLA claim and the

16 North Carolina and New York state law claims.  First, California

17 law is significantly different than FLSA.  <u>See</u> <u>e.g.</u>, <u>Gardner v. GC</u>

18 <u>Services, LP</u>, No. 10-CV-997-IEG (CAB), 2010 WL 2721271, *6 (S.D.

19 Cal. July 6, 2010) (comparing class certification and the

20 calculation of overtime remedies under FLSA and the Cal. Labor

21 Code; ultimately finding "significant differences"); <u>Nordquist v.</u>

22 <u>McGraw-Hill Broadcasting Co.</u>, 32 Cal. App. 4th 555, 562 (1995)

23 ("California's professional employee exemption is narrower than

24 that in the FLSA and the administrative employee exemption is

25 somewhat different").

26      Moreover, while the <u>Rindfleisch</u> FLSA claim only seeks relief

27 for defendant's misclassification and failure to pay overtime

28 wages, (Def.'s RJN, Ex. A, ¶¶ 3, 13), the instant action's

California law claims also seek relief for defendant's failure to (1) pay compensation due within the time specified by California law (Count III), (2) provide timely and accurate wage statements (Count IV), (3) provide required rest and meal breaks (Count V), and (4) for violation of California Business and Professions Code § 17200 *et seq*. (Count VI), (id. at Ex. B, ¶¶ 53-79.)

The Wilkie state law claims also do not overlap the Rindfleisch New York and North Carolina state law claims. Defendant contends that the instant action's state law claims do not preclude application of the first-to-file rule because whichever federal court ultimately hears the case may exercise supplemental jurisdiction to determine any state law claims. However, this is irrelevant to the court's inquiry.  The court must consider the pleadings and the cases as they currently exist. See, Gardner v. GC Services, LP, No. 10-CV-997-IEG (CAB), 2010 WL 2721271, *5 (S.D. Cal. July 6, 2010).  Whether amendments to the pleadings could later add a California class action to the Rindfleisch action is not pertinent.  What is relevant is that the Rindfleisch action alleges no California state law claims, so no overlap can exist; this makes the issues dissimilar.

On balance, there are more dissimilarities in the issues than similarities, and thus, this requirement for application of the rule is also not met.

**4.   Equities**

Finally, even if the requirements of the first-to-file rule were met, the court has broad discretion to not apply the rule in the interests of equity.  Adoma v. University of Phoenix, _F.Supp.2d_, 2010 WL 1797263 at * 6 (E.D. Cal. May 3, 2010).

1  Plaintiff contends that the prejudice she and the class may suffer
2  due to the unsettled procedural posture of the <u>Rindfleisch</u> action
3  is a persuasive equitable reason not to apply the first-to-file
4  rule.  The court agrees.

5      The statute of limitations for a FLSA claim runs until the
6  party opts in, *i.e.*, it is unlike a class action where the statute
7  of limitations is tolled while plaintiff seeks class
8  certification.  <u>See</u>, 29 U.S.C. § 256.  A plaintiff has a two year
9  window to commence an action unless there is a willful violation
10 which affords her three years.  <u>Id.</u> at § 255(a).  Defendant has
11 moved for transfer of the <u>Rindfleisch</u> action to the Northern
12 District of Georgia, which will be heard November 5, 2010.  It is
13 unclear when discovery will commence, and thereafter,
14 certification of the proposed collective action.

15     <u>Rindfleisch</u>'s unsettled posture raises several issues.
16 First, delay in certification of the class may cause some nation-
17 wide collective members to lose their claims.  Second, at this
18 stage in the litigation, it is not clear that the <u>Rindfleisch</u>
19 nation-wide class will be certified.  As such, and as plaintiff
20 contends, class members nation-wide may be harmed by not allowing
21 this case to at least move forward to the collective action
22 certification.  Finally, as set forth above, it seems possible
23 that transferring this action before it is determined whether each
24 nation-wide class includes the same employees might seriously
25 infringe the rights of potential collective members of plaintiff's
26 proposed nation-wide class.
27 ///
28 ///

11

1   Accordingly, the court is persuaded that the equities in this

2   case further militate against applying the first-to-file rule.

3                              **CONCLUSION**

4   For the foregoing reasons, defendant's motion to transfer is

5   DENIED.

6   IT IS SO ORDERED.

7   DATED: September 16, 2010

8   _____

9                    FRANK C. DAMRELL, JR.
                     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28