Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Michael J. Palitz, Esq.
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Phone:  (914) 934-9200
Fax:      (914) 934-9220

C. Brooks Cutter, Esq. (SBN 121407)
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Phone: (916) 448-9800
Fax:      (916) 669-4499

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE WILKIE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENTIVA HEALTH SERVICES, INC.<br><br>Defendant. | Case No.  2:10-CV-01451-GEB-GGH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASSES; (3) APPROVING CLASS NOTICES, CLAIM FORM AND OPT-OUT PROCEDURE; (4) DIRECTING DISSEMINATION OF CLASS NOTICES; AND (5) SETTING A HEARING FOR FINAL APPROVAL OF THE SETTLEMENT**<br><br>Date:      October 9, 2012<br>Time:     9:00 a.m.<br>Ctrm:     10<br><br>Judge:   Garland E. Burrell, Jr. |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND........................................................................... 2

III. SUMMARY OF SETTLEMENT TERMS AND RELIEF PRESENTLY SOUGHT .......... 5

IV. CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ........................................ 8

V.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.................. 10

    1.   The Standards and Procedures for Preliminary Approval ........................................... 10

    2.   There is a Strong Basis to Believe that the Settlement is Fair, Reasonable and Adequate .................................................................................... 12

VI. NOTIFICATION OF THE SETTLEMENT AND CERTIFICATION TO THE STIPULATED CLASSES ARE APPROPRIATE ............................................... 21

    1.   The Elements of Rule 23(a) Are Met ....................................... 22

        a.   Numerosity Under Rule 23(a)(1) ........................... 23

        b.   Commonality Under Rule 23(a)(2) ......................... 24

        c.   Typicality Under Rule 23(a)(3)................................ 25

    2.   Adequacy Under Rule 23(a)(4) And Under Rule 23(g) Are Met................ 26

    3.   The Requirements of Rule 23(b)(3) Are Met ................................ 27

VII. THE PROPOSED CLASS NOTICES ARE APPROPRIATE........................................... 30

    1.   The Class Notices Satisfy Due Process Requirements .................................. 30

    2.   The Proposed Class Notices Are Accurate and Informative ......................... 31

VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ................................. 32

IX. CONCLUSION ........................................................................................ 32

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Acosta v. Equifax Info. Servs., L.L.C.,* 243 F.R.D. 377 (C.D. Cal. 2007) .................................. 25

4

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997). ....................................... 11, 22, 27

5

6

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975) ....................................... 28

7

*Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 6976 (E.D. Cal. Jan. 24, 2011)........... *passim*

8

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (Cal. 2012) ........................... 13, 14, 15

9

*Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) 18

10

*Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) ......................................... 15

11

12

*Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990).. 18

13

*Califano v. Yamasaki,* 442 U.S. 682 (1979) .............................................................. 25

14

*Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2011 U.S. Dist. LEXIS 146067 (W.D. Pa. Dec. 20, 2011) ........................................................................................ 14

15

16

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041 (1st Cir. 1996). ................ 16

17

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992)................................ 8, 9,10, 11

18

*Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977) ........................................................ 15, 16, 17

19

*Driver v. Appleillinois, LLC*, 2012 U.S. Dist. LEXIS 27659 (N.D. Ill. Mar. 2, 2012) .............. 28

20

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ............................................................ 30, 31

21

*Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) .......................... 17

22

*Gen. Tel. Co. v. E.E.O.C.,* 446 U.S. 318 (1980) ....................................................... 23

23

24

*Glass v. UBS Fin. Servs., Inc.,* 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)...... 18, 21

25

*Gonzalez v. Millard Mall Servs.*, 2012 U.S. Dist. LEXIS 28142 (S.D. Cal. Feb. 28, 2012) ...... 15

26

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).................................................*passim*

27

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992)..................................... 25

28

*Hayworth v. Blondery Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992) ....................................... 25

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ................................................................................................................. 17

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3rd Cir. 1995) ......................................................................................................................... 8

*In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass 2004) ........... 18, 22

*In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir. 2000) ................................................. 18

*In re Traffic Exec. Assoc. - Eastern R.R.s,* 627 F.2d 631 (2d Cir. 1980) .................................... 19

*Jordan v. L.A. County,* 669 F.2d 1311 (9th Cir. 1982) ............................................................... 23

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ...................................................... 15

*Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623 (E.D. Cal. 2009) .............................. 23

*Montgomery v. Rumsfeld,* 572 F.2d 250 (9th Cir. 1978) ............................................................ 23

*Moreno v. AutoZone, Inc.,* 251 F.R.D. 417 (N.D. Cal. 2008) ..................................................... 27

*Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468 (E.D. Cal. 2010). .................................... *passim*

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................... 12, 18

*Potter v. Pac. Coast Lumber Co. of Cal.,* 37 Ca1.2d 592 (1951) ............................................... 10

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968). ...................................................................................................................... 8

*Rolland v. Cellucci,* 191 F.R.D. 3 (D. Mass. 2000) .................................................................... 15

*Ross v. Citizens Bank, N.A.,* 667 F.3d 900 (7th Cir. 2012) ............................................. 24, 25, 28

*Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008) ...................................... 15

*Sliger v. Prospect Mortgage, LLC*, 2011 U.S. Dist. LEXIS 94648 (E.D. Cal. Apr. 23, 2011) .. 23

*Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. 2009) .................................. 5, 16

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976) ................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................... 24

*Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224 (2001) .................................................. 9

*West v. Circle K Stores, Inc.,* 2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June 12, 2006) .......... 12

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)................................................. 8

*Youngblood v. Family Dollar Stores, Inc*., 2011 U.S. Dist. LEXIS 115389 (Oct. 4, 2011)....... 28

**Statutes and Rules**

28 U.S.C. § 1715 .............................................................................................. 2, 32, 33

California Labor Code............................................................................................ 2,3

California Labor Code § 201................................................................................. 2, 21

California Labor Code § 202................................................................................. 2, 21

California Labor Code § 203................................................................................. 2, 21

California Labor Code § 218.5.............................................................................. 2, 21

California Labor Code § 226................................................................................. 2, 21

California Labor Code § 510................................................................................. 2, 21

California Labor Code § 512................................................................................. 2, 21

California Labor Code § 1174............................................................................... 2, 21

California Labor Code § 1194............................................................................... 2, 21

California Labor Code § 2802....................................................................................2

California Business and Professions Code 17200, *et seq* ................................................. 2, 3, 21

Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*.................................... *passim*

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**Other Authorities**

Manual for Complex Litigation, Fourth (Fed. Judicial Center 2006)...................................*passim*

4 Newberg on Class Actions 4th (2002) ................................................................*passim*

I.  **INTRODUCTION**

Plaintiff Catherine Wilkie ("Representative Plaintiff"), by and through her counsel ("Settlement Class Counsel"), hereby seeks preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the Settlement Agreement ("Settlement Agreement"), attached as Exhibit A to the Declaration of Seth R. Lesser ("Lesser Decl.").  The Settlement Agreement was entered into by Plaintiff, on behalf of herself and all persons similarly situated, and Defendant Gentiva Health Services, Inc. on behalf of itself and its past, present, or future subsidiaries, parent companies, affiliates, divisions, corporation in common control, successors or assigns and all past or present officers, directors, shareholders, partners, agents, insurers, employees, attorneys, advisors, accountants, representatives, trustees, heirs, executors, administrators, predecessors, successors or assigns of any of the foregoing entities (collectively "Gentiva").  (Plaintiff and Defendant are collectively referred to herein as the "Parties").  Specifically, Plaintiff respectfully requests that the Court enter the proposed Order, attached as Exhibit B to the Lesser Decl. ("Preliminary Approval Order"):

1.  granting Preliminary Approval of the proposed Settlement;

2.  certifying for settlement purposes only the proposed collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA") and the state law class pursuant to Rule 23 of the Federal Rules of Civil Procedure as described below;

3.  appointing the law firms representing Plaintiff named in the Amended Complaint[1] and in the Settlement Agreement between the Parties as Settlement Class Counsel for settlement purposes;

4.  appointing Garden City Group, Inc. as Claims Administrator;

5.  approving the form of and directing distribution of the proposed Notices of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notices") and Claim Form, Consent to Join and Release ("Claim Form"), attached as Exhibits C and D, respectively, to the Lesser Decl.; and

---

[1] Unless specifically defined herein, capitalized terms used herein have the meanings assigned to them in the Settlement Agreement.

1

6. setting the Final Approval hearing for a date no earlier than one hundred fifty-five (155) days, or as soon thereafter as practicable, after entry of the Preliminary Approval Order, to account for the time period required by 28 U.S.C. § 1715 and per the terms of the Settlement Agreement.

The proposed Settlement satisfies all of the criteria for preliminary approval and deserves approval. Accordingly, Representative Plaintiff requests that the Court grant preliminary approval of the proposed Settlement, provisionally certify the Stipulated Rule 23 Class and Stipulated Collective Action Class, direct distribution of Class Notices and Claim Form to the Stipulated Class Members, and schedule a final approval hearing in this matter.

## II.   FACTUAL BACKGROUND

With Defendant's approval and without opposition, Plaintiff hereby moves for Preliminary Approval of the Settlement, which was reached after several months of arms-length and good faith negotiations, culminating in two days of mediation over two sessions before a highly respected and experienced JAMS mediator with an extensive history mediating wage and hour cases such as this one. The Settlement will provide a fair, reasonable and adequate recovery to individuals employed by Defendant as Clinical Associates ("CAs") paid pursuant to Gentiva's Pay Per Visit Program ("PPV Program") and who had potential disputed claims challenging Defendant's wage policies and practices under the FLSA, 29 U.S.C. § 201, *et seq.*, as well as claims such individuals employed in California had under California Labor Code Sections 201, 202, 203, 218.5, 226, 226.3, 226.7, 510, 512, 1174, 1174.5, and 1194 and Claims under Business and Professions Code Section 17200, *et seq.*[2]

This case was filed as a putative class and collective action by the Representative Plaintiff on behalf of herself and a Class of current and former Gentiva CAs who worked within California for the Fed. R. Civ. P. 23 claims and in the United States for the FLSA claims and

---

[2] Excluded from the Settled Claims are claims that by law cannot be released by this Agreement, including, without limitation, claims for workers' compensation benefits, claims under California Labor Code § 2802, claims for unemployment insurance, and claims for accrued and/or vested benefits under

2

1   who were paid pursuant to Gentiva's Pay Per Visit Program.  The case was filed on June 11,

2   2010.  In the Complaint, Plaintiff sought unpaid wages including overtime compensation and

3   interest thereon, waiting time penalties, restitution, injunctive and other equitable relief and

4   reasonable attorneys' fees and costs, under the Federal Fair Labor Standards Act, the California

5   Labor Code, and the California Business and Professions Code.  In effect, the core claims in the

6   case were that Gentiva was not paying the class members the full overtime to which they were

7   entitled because Gentiva's time records did not capture all of their time and Gentiva failed to

8   have in place proper procedures for employees to enter time spent working outside of patient

9   visits and failed to train employees how to record their time.  Ms. Wilkie and other CAs

10  testified that Gentiva only instructed CAs to enter time spent at patient visits and discouraged

11  them from entering time spent working at home, while, among other things, completing

12  paperwork, participating in case conferences, and reviewing charting.  Lesser Decl. at ¶ 4.  As

13  to the California state law claims, Plaintiff asserted that Gentiva failed to pay all overtime hours

14  worked, failed to provide and/or ensure that CAs took meal and rest breaks while out

15  performing services in the field and failed to provide timely, accurate itemized wage statements.

16  Ms. Wilkie also testified that she worked through meal breaks and did not take rest breaks.

17  Lesser Decl. at ¶ 4.  In other words, the claims in the case were for what are called "off the

18  clock" claims in wage and hour legal parlance.

19          Over nearly two years since commencement of this action, the Parties have engaged in

20  extensive litigation practice, including, particularly, in-depth discovery as to the claims in the

21  case, including claims as to the policies and practices at issue and whether or not CAs were

22  similarly situated.  The Parties have thoroughly litigated this case, including: the review and

23

24

25

26  analysis by Settlement Class Counsel of myriad pages of documentation produced in discovery,

27

28  _____

the Employment Retirement Income Security Act.

including pay data for nearly 100,000 entries; the review and analysis by Settlement Class Counsel of electronic data and documents produced by Gentiva; the depositions of the representative Plaintiff and opt-ins by Gentiva; and the depositions by Settlement Class Counsel of corporate 30(b)(6) representatives.  The litigation has involved a thorough investigation and discovery process that has placed the Parties in an excellent position to evaluate the merits and value of this lawsuit.  Lesser Decl. at ¶¶ 4-6.

The Parties worked with a highly-qualified and experienced mediator, David Geronemus, Esq. of JAMS, successfully to resolve the case.  Not only did the Parties exchange damages and analyses but also submitted mediation briefs, evidence and legal authorities to the mediator prior to the mediation sessions.  The first mediation session was held on August 3, 2011.  After that proved unsuccessful, the parties agreed that there was value in continued discussion and a second day was proposed, before which there were additional submissions by counsel to the mediator, and discussion with the mediator.  Lesser Decl. ¶¶ 7-10.

On March 7, 2012, after another day-long mediation session with Mr. Geronemus, the parties reached a tentative settlement, which was memorialized in a term sheet.  Though the Parties had an agreement as to the major terms of the Settlement, a number of important details were unresolved, and additional negotiations were required to achieve the proposed Settlement Agreement which is the subject of this Motion.

The Parties are of the opinion that the Settlement Agreement is fair, reasonable, and adequate.  Lesser Decl. at ¶ 10.  Further, Settlement Class Counsel believes that the Settlement Agreement is in the best interests of the Stipulated Class Members in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues Gentiva may assert.  *Id.*  A resolution of this litigation at this stage – rather than following upon another year or more of discovery,

collective and class action briefing, pre-trial proceedings and potential trial and the costs attendant upon and, likely to be incurred through such activities, most certainly inures to the benefit of the CAs. *Id.* at ¶¶ 10-11.  That such cases can be time consuming, fraught with issues and expensive is undeniable.  *See, e.g.*, *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. 2009) (opt-in collective action on behalf of 342 employees that followed two years of discovery, consumed six weeks of trial time alone, and cost hundreds of thousands of dollars in expenses; the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for decertification of the collective class, *see*  Lesser Decl. at ¶ 10).  Further, Settlement Class Counsel were fully cognizant, and had to take into consideration, the fact that Gentiva has faced substantial financial setbacks during the course of the litigation – indeed, its stock price has declined nearly 80% during the last year alone and is now trading at approximately $5 a share (down from almost $25 a year ago).  Accordingly, the proposed settlement here is a beneficial result for Stipulated Class Members.

In addition, Settlement Class Counsel has fully advised Representative Plaintiff of the Settlement Agreement, who approves of and consents to the Settlement. *Id.* at ¶ 13.  Inasmuch as the Settlement is the product of arms-length negotiations by informed counsel and has been approved by the Representative Plaintiff, the terms of the Settlement are presumptively fair and deserving of preliminary approval.

## III.   SUMMARY OF SETTLEMENT TERMS AND RELIEF PRESENTLY SOUGHT

The Settlement Agreement provides that, if approved, Gentiva will pay the Gross Settlement Amount of $5,000,000 (five million dollars) to fully and finally resolve this lawsuit in its entirety, inclusive of all Attorneys' Fees and Lawsuit Costs; interest; Administration

Costs; liquidated, punitive and multiple damages; taxes; payroll taxes; Employer Payroll Taxes;

and Incentive Awards (assuming approval of the same). *See* Settlement Agreement at § 6.2.

The Settlement, including notice, administration, and handling the qualified settlement fund will

be administered by an independent and experienced third-party claims administrator, The

Garden City Group, Inc. (the "Claims Administrator"). The Settlement is designed to cover all

back pay and liquidated/statutory damages available under each applicable law, as well as

Settlement Class Counsel's Attorneys' Fees and Lawsuit Costs up to twenty-five percent (25%)

of the $5,000,000, subject to Court approval. In addition, the Settlement includes an Incentive

Award to the Representative Plaintiff of up to but not exceeding $5,000, subject to Court

approval. *Id.* at § 6.4. The Settlement will also pay for Administration Costs (*e.g.*, notice and

settlement administration). Finally, the Settlement will pay the full amount of the participating

class members' W-2 withholdings (and state/local withholdings if applicable) and any

Employer Payroll Taxes on back wage payments made to participating claimants. *Id.* at §§ 6.2,

6.6. Each Class Member's payment will vary proportionately, as each is eligible to receive a

share of the Net Settlement Fund based upon his or her weeks worked during the applicable

period. *See* Settlement Agreement at § 6.7.

      The Settlement provides that each individual who is a Stipulated Class Member shall be

sent a Notice by the Claims Administrator. The Settlement Agreement provides for <u>two</u> forms

of notice. Stipulated Rule 23 Class Members will receive a "Notice of Proposed Settlement of

Class Action and Collective Action." (Settlement Agreement ¶ 5.3.) Stipulated Collective

Action Class Members *who are not also Rule 23 Class Members* will receive a "Notice of

Proposed Settlement of Collective Action." (Settlement Agreement ¶ 5.4.) The Stipulated

Rule 23 Class Members do not need to return a Claim Form to become part of the Settlement

Class (Settlement Agreement ¶ 5.3) because the Rule 23 class action is an opt-out class action.

After receipt, in order to receive payment, the Stipulated Collective Action Class Members must submit an executed Consent to Join, Claim Form, and Release ("Valid Claim Form") (*see* Settlement Agreement at Exhibit A).  For the Stipulated Collective Action Class Members who send in Valid Claim Forms, Gentiva will receive a Release of all wage and hour claims that could have been asserted against it arising out of these individuals' employment with Gentiva as a CA during the applicable period.  *Id.* at § 7.  Rule 23 Class Members who have not timely submitted a valid and enforceable Opt-out Statement, their claims will be barred by the Settlement once it is final, whether or not they submit a Claim Form.  *Id*. at § 5.12.

Using Gentiva's payroll data and subsequent computerized address searches when needed, the Claims Administrator will make all reasonable efforts to ensure that each Stipulated Class Member receives the Court approved Notices of the Settlement (attached for Court approval as Exhibit C to Lesser Decl.).  The Notices shall set forth the material settlement terms and instructions on how to (1) submit a claim form to participate in the Settlement; (2) submit objections to the Settlement and when and where to appear at the Final Approval hearing; or (3) how to opt-out of the Settlement altogether.

After the Court approves the Settlement, upon such approval becoming final and the completion of settlement administration and, upon further order of the Court, the Claims Administrator will ensure distribution of the Net Settlement Fund to the Class Members.

The Parties propose that, along with granting Preliminary Approval of the Settlement, the Court adopt the schedule set forth below, for the Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

| | *Event* | *Timing* |
|---|---|---|
| 1 | Preliminary Approval Hearing | October 9, 2012 |
| 2 | Notice Date | No more than forty-five (45) days after the entry of Preliminary Approval Order |
| 3 | Deadline for filing Objections | Thirty (30) days from the date the Notice to the Stipulated Class Member was postmarked |

| 4 | Deadline for returning Opt-out Statements | Forty-five (45) days from the date the Notice to the Stipulated Class Member was postmarked. |
|---|---|---|
| 5 | Deadline by which Claim Forms must be postmarked | Forty-five (45) days from the date the Notice to the Stipulated Class Member was postmarked. |
| 6 | Final Approval/Fairness Hearing | Not earlier than one-hundred fifty-five (155) days after the entry of Preliminary Approval Order. |

As set forth below, Representative Plaintiff submits that the Settlement satisfies all the criteria for preliminary settlement approval under federal and state law. Accordingly, Representative Plaintiff requests that the Court grant the requested relief.

**IV.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE**

By this Motion, Representative Plaintiff seeks preliminary approval of the Settlement Agreement. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reduces the burden on judicial resources. Federal Rule of Civil Procedure 23(e) provides that the Court must approve a settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks"). The ultimate determination of whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968).

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation, Fourth (Fed. Judicial Center 2006) ("Manual Fourth") § 21.63. The Manual's settlement approval procedure describes the following steps:

1.   Preliminary fairness review of the proposed Settlement;

2.   Dissemination of mailed and/or published notice of the Settlement and formal fairness review to all affected Class members; and

3.   A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard and evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

This procedure, commonly used by courts and endorsed by the leading class action commentator, Professor Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Newberg on Class Actions 4th (2002) § 11.2.

The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 234-35 (2001) ("In general questions whether a settlement was fair and reasonable, whether certification of the class was proper, and whether the attorneys' fee award was proper are matters addressed to the trial court's broad discretion."). Accordingly, a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs,* 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion.)

With this Motion, Representative Plaintiff requests that the Court take the first step in the settlement approval process, and grant preliminary approval of the proposed Settlement. The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and whether the Class Notice setting forth

the terms and conditions of the Settlement, and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Newberg § 11.25.  As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

## V.   **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 Newberg § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs*, 955 F.2d at 1276; *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *Potter v. Pac. Coast Lumber Co. of Cal.,* 37 Ca1.2d 592, 602 (1951).  These concerns apply with particular force in a case such as this, where an allegedly illegal practice affected many hundreds of employees.

        1.        The Standards and Procedures for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997).

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval.  *See* Manual Fourth § 13.14, at 172-73 (2004) (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").  Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval.  *Id.* at 322.  Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled.  *Id.* at 320. In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties.  *Id.* at 320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied.  *See* Manual Fourth at § 21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.").  The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate.  *Class Plaintiffs*, 955 F.2d at 1276; *Officers for*

1   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

2
      2.  There is a Strong Basis to Believe that the Settlement is Fair, Reasonable
3
          and Adequate

4         Before granting final approval of a proposed class action settlement, the Court must find

5   that the settlement is fair, reasonable and adequate.  *See id*; Fed. R. Civ. P. 23(e).  In conducting

6   this analysis, the court must balance several factors including:

7
      the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of
8         further litigation; the risk of maintaining class action status throughout the trial; the
      amount offered in settlement; the extent of discovery completed and the stage of the
9         proceedings; the experience and views of counsel; the presence of a governmental
      participant; and the reaction of the class members to the proposed settlement.
10

11   *Hanlon,* 150 F.3d at 1026.  Given that some of these factors cannot be fully assessed until the

12   court conducts its fairness hearing, "a full fairness analysis is unnecessary at this stage . . . ."

13   *West v. Circle K Stores, Inc.,* 2006 U.S. Dist. LEXIS 42074, at *29 (E.D. Cal. June 12, 2006).

14   "The court, therefore, will simply conduct a cursory review of the terms of the parties'

15   settlement for the purpose of resolving any glaring deficiencies before ordering the parties to

16   send the proposal to class members."  *Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468, 478

17   (E.D. Cal. 2010).  In the case at bar, an examination of each of the factors to be examined at this
18
19   stage demonstrates that there is a strong basis to preliminarily conclude that the proposed

20   settlement is fair, reasonable and adequate to the members of the class.

21         First, with respect to complexity, expense, and duration of litigation, the prosecution of

22   this case has already been lengthy and expensive and, unless settled, only would continue to be

23   so.  If this Settlement is not approved, the Parties face an extended and costly battle, first
24
regarding FLSA conditional certification for the FLSA claims, second for Rule 23 class
25
certification for the state law claims, possible decertification motions if the FLSA and Rule 23
26
certification motions were granted and then summary judgment motions on the merits of
27

28

whether the CAs were properly compensated.[3]  Depending on the outcome of those motions, the parties would have to prepare for trial, which would likely be lengthy and costly.  Further, if this litigation does not settle, it could well be likely to take years and millions of dollars in legal fees before reaching final resolution, including exhaustion of all appeals.  Settlement Class Counsel's experience in similar wage and hour cases (including trial) has amply demonstrated that this is a very real possibility.

Second, with respect to the strength of Plaintiff's case and likelihood of success in obtaining and keeping collective and/or class certifications and in recovering on the merits of the case, Plaintiff recognizes that obtaining a nationwide class of CAs as to FLSA claims at various Gentiva locations could have been challenging.  Indeed, Plaintiff counsel's investigation showed that practices as to CAs was not consistent across the country outside of California and that, inasmuch as Gentiva grew by accretion over the years, different practices were, in fact, in place at different locations across the country.  Lesser Decl. at ¶ 10.  Even if Plaintiff succeeded in obtaining certification of the FLSA claims under the lenient conditional collective action certification standard (29 U.S.C. § 216(b)), Settlement Class Counsel believed that keeping such certification through decertification would have been exceedingly problematic.  Id.  This is why, in order to resolve the litigation, the non-California FLSA claims that are being settled are those limited to specific locations at which opt-in Plaintiffs worked (as compared to the California claims which are being settled on a state-wide basis).  Further, as to

---

[3]  Litigating these claims could require substantial additional preparation and discovery.  It ultimately would involve the depositions and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and, the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Gentiva denies that any violations of law have occurred or are occurring and given the state of the law on the issue of meal and rest breaks as to the California state law claims, even after the California Supreme Court's decision in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (Cal. 2012), Gentiva would possibly appeal any adverse ruling on the validity of its compensation practices for CAs.  In contrast, the Settlement Agreement will yield a prompt and certain recovery for the Classes.  Such a result will benefit the Parties and the court system.  Certainly, putting the matter out for notice in order to determine the reaction of the Classes as a whole is warranted.

the merits, even aside from the difficult issue presented as to what standard applies to an employer's responsibility to ensure that time is captured for overtime work, *see Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2011 U.S. Dist. LEXIS 146067, at *14-18 (W.D. Pa. Dec. 20, 2011) (collecting cases), as a factual matter, proving either (1) "willfulness" in order to get a third year of statute of limitations under the FLSA, or (2) an absence of "due care" by Gentiva in order to get liquidated damages, is never an easy matter in an FLSA case.  Here, Representative Plaintiff recognizes that some company documents arguably supported the fact that CAs were properly compensated (or at least being offered the opportunity to claim such time), making proving Gentiva's "willfulness" and absence of "due care" time-consuming, fact-intensive and risky. These same documents made the California state law claims equally risky:  under the California Supreme Court's decision in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (Cal. 2012) (and even before the decision was issued), the question of what constituted Gentiva's "policy" of capturing overtime and how it was implemented was problematic and subject to different opinions.  *See* Lesser Decl. at ¶¶ 4, 5, 10 (noting how the official policy is that "Non-exempt associates are subject to overtime if they work more than 40 hours/week" including time spent working at home and that the corporate representative testified "[Gentiva] record[s] all the hours worked in order to track our requirements for overtime;" also noting how yet other testimony suggested there was little or no effort to ensure that overtime was captured).  In this case, Gentiva had records of hours and overtime recorded, and while Plaintiff challenged the completeness of those records and the manner in which individuals may have not known how to obtain overtime, the existence of those records presented a substantial defense of Gentiva's to the amount of damages (which, under the records, would have been but a fraction of what Plaintiff asserted).  Lesser Decl.  at ¶ 8.  Even before *Brinker*, the issue of obtaining class certification for meal and rest break claims was difficult in California.  *See Brown v. Federal*

*Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008) (plaintiffs showed no method of common proof to establish Fed Ex's policies prevented the putative class from taking required breaks); *Gonzalez v. Millard Mall Servs.*, 2012 U.S. Dist. LEXIS 28142, at *24 (S.D. Cal. Feb. 28, 2012) (plaintiffs showed no "uniform practice of denying employees their meal breaks and/or rest breaks"); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008) (denying class certification because individual issues predominate as the court would need to determine why each class member did not clock out for a meal break on any particular day); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 534 (S.D. Cal. 2008) (denying class certification because individual issues predominate to determine whether defendants forced plaintiffs to forgo missed meal periods).

Accordingly, Representative Plaintiff and Settlement Class Counsel understood that obtaining FLSA conditional certification and Rule 23 class certification, surviving partial or complete summary judgment or a motion to decertify if the classes were certified would have presented significant hurdles.  Necessarily, the monetary benefit that is now being extended in the Settlement to the Class Members would not exist if the Representative Plaintiff was unable to obtain collective and/or class certification.

Third, with respect to the experience and views of counsel, a "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small."  *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *Murillo*, 266 F.R.D. at 479; *West*, 2006 U.S. Dist. LEXIS 42074, at *34; *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996).  As noted, the settlement was reached after arms-

15

length negotiation at two formal mediation sessions as well as informal discussions between the mediator and the parties.  Both Settlement Class Counsel and Gentiva's Counsel have substantial experience in wage and hour litigation involving the FLSA and California state laws and, as noted above, have engaged in lengthy discovery in this matter which included, among other things, multiple depositions and the review of thousands of pages of documents and payroll data.  Through these thorough efforts, counsel has been able to act intelligently with respect to the negotiations as the risks for all sides were apparent.

Both Plaintiff and Defendant are represented by highly experienced and competent counsel.  Among Settlement Class Counsel are nationally recognized members of the plaintiffs' bar, specializing in complex class litigation, including, specifically, as relevant here, employment and wage and hour claims.  *See* Exhibits E (Klafter Olsen & Lesser LLP Firm Resume) and F (Kershaw, Cutter & Ratinoff, LLP Firm Resume) attached to Lesser Decl.  Indeed, it fairly can be said that Settlement Class Counsel includes some of the leading employment and FLSA/wage and hour attorneys in the country.  Settlement Class Counsel have, between them, prosecuted a substantial number of wage and hour cases to successful conclusion (both at trial and in settlement).  Settlement Class Counsel includes attorneys who recently won a jury trial in a wage and hour case on behalf of assistant managers against the office retailer Staples.  *Id.* at ¶ 11.[4]  They also, just this year, won a FLSA collective action arbitration.  *Id.*  Taking even one collective action to trial is rare in this area of the law; having taken two (and won both) is, we believe, perhaps unprecedented.  Settlement Class Counsel has

---

[4] Notably, while Settlement Class Counsel succeeded in their collective action trial against Staples, the next two such misclassification cases of which we are aware that went to trial led to defendant employers' verdicts, which underscores the risk inherent in wage and hour litigation.  *Compare, e.g., Stillman v. Staples, Inc.,* No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.,* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) (collective action defendant's verdict).

also obtained other significant court approved settlements of class action wage and hour cases in literally scores of other cases, an amount that exceeds $100 million.  *See* Lesser Decl. at Exhibits E & F.  Experience and reputation of counsel is paramount and Settlement Class Counsel has the experience necessary to support this settlement on behalf of the Classes.  *See*, *e.g.*, *Cotton,* 559 F.2d at 1330; *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

In turn, Gentiva's counsel are prominent leaders in their respective areas.  Michael Brewer and Anne-Marie Waggoner, the principal lawyers on the case, and their other colleagues at Littler Mendelson, P.C., are nationally known for their wage and hour, including FLSA, defense practice.

Further, not only was the Settlement Agreement the result of protracted, good faith, arms-length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the substantial assistance of an experienced JAMS mediator, well-versed in the nuances of wage and hour class actions. The Settlement was therefore not the product of collusive dealings, but rather, was informed by the vigorous prosecution of the lawsuit by the experienced and qualified counsel.  Courts have recognized that where, as here, an experienced mediator with extensive dealings in complex employment litigation helped resolve this matter, this fact supports approval of the settlement. *Murillo*, 266 F.R.D. at 479; *Glass v. UBS Fin. Servs., Inc.,* 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007).

The $5,000,000 Gross Settlement Amount is a substantial result for a wage and hour class of 1,700 individuals and will undoubtedly result in significant payments to Class Members.  Lesser Decl. at ¶ 12.

Fourth, with respect to the amount of the proposed settlement compared to the amount potentially at issue, the value of the settlement is fair and reasonable given the various challenges facing Representative Plaintiff and the putative Classes.  In determining whether the amount offered in settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement amount to the parties' "estimates of the maximum amount of damages recoverable in a successful litigation."  *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628; *see also Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

Specifically, based upon the multiple legal and factual risks continued litigation would entail including class certification issues since certification has not yet been obtained, and the risk that Representative Plaintiff and the putative classes could recover nothing if this litigation were to proceed, this settlement amount is fair and reasonable to Representative Plaintiff and the Stipulated Classes.  *See Glass*, 2007 U.S. Dist. LEXIS 8476, at *13-14; *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, *inter alia*, "the proposed settlement amount

is sufficiently within the range of reasonableness."); *In re Traffic Exec. Assoc. - Eastern R.R.s,* 627 F.2d 631, 633-34 (2d Cir. 1980); 4 Newberg § 11.25.

In a case like this one, the estimated potential recovery by Representative Plaintiff and the Stipulated Classes must account for a large number of legal and factual contingencies. They include how many hours the average employee worked "off the clock"; how many weeks per year the average employee worked those hours; whether the employees can obtain a third year of damages under the FLSA (a question of willfulness); and whether the employees can obtain liquidated damages under the FLSA (a question of good faith) and/or equivalent statutory penalties under the California state wage and hour laws.  These are fact intensive questions that also depend on favorable legal determinations.

Representative Plaintiff estimates that Stipulated Collective Action Class Members worked, on average, 10 overtime hours per week "off the clock" (a high average figure, since it averages to two hours a day, each day), and worked those hours for 40 weeks per year (also a high average figure), then the value of the claims estimated by Representative Plaintiff for unpaid wages being settled here would be approximately $31 million, an amount which does not factor in the fairly substantial legal or factual risks to Plaintiff the case presented and which is derived using a full time-and-one half calculation (even though there is substantial law now concluding that the calculation should be half time for overtime hours).  These numbers also assume that all 1,700 members of the class would have joined the Collective Action Class (when typical participation rates range from 10-20%).  The potential damages for the California claims would be another, approximately, $22.4 million which assumes that <u>all</u> claims would have been certified and successful – an uncertainty given the state of meal and rest break law in California, the facts here and the difficulty that exists in certifying such claims.  In short, such valuations would assume that the sun would have been shining all the time, everywhere, on the

1    Representative Plaintiff's efforts.  That rarely happens in litigation, however.  Notably,

2    Gentiva's calculation of possible damages, based upon the time records (*see* above, page 14 and

3    Lesser Decl. ¶ 8), was but a small fraction of Plaintiff's calculations.

4          <u>Fifth</u>, with respect to the stage of proceedings and the amount of discovery completed,

5    Settlement Class Counsel conducted a sufficient investigation of the claims asserted in the

6    Action, as well as the recoverable damages, thus allowing them to assess the fairness of the

7    Settlement.  There have been multiple depositions, tens of thousands of pages of documents

8    exchanged and reviewed, and an analysis of wage and pay data.  In addition, if this case

9    continued and Plaintiff obtained collective action and class certification, there would be many

10   additional depositions that could well have been taken throughout the country which would

11   have been an expensive and time consuming endeavor for the Parties.  In addition, the

12   mediation process itself involved substantial frank and full discussion of the strengths and

13   weaknesses of the various claims, including, *e.g.*, such matters as the strength of Plaintiff's case

14   in light of the official Gentiva corporate policy, the size of the damages in light of Gentiva's

15   time records and the like.  The forthright nature of the mediation process and the back-and-forth

16   between the sides, as well as the views of an extremely respected and experienced mediator as

17   to those strengths and weaknesses, focused for the Parties the legal and factual issues presented

18   by this case, and this Settlement will resolve the legal risks which the Parties fully appreciate at

19   this point in the litigation.

20         <u>Sixth</u>, with respect to the reaction of the classes to the settlement, the Court will only be

21   able to evaluate this factor after the notice period.

22         <u>Seventh</u>, a government participant was not involved in the settlement and, therefore, this

23   factor neither favors approval nor disapproval of the settlement.  *Glass*, 2007 U.S. Dist. LEXIS

24   8476, at *15.

The settlement fund of $5 million is a fair, reasonable and adequate result for the 1,700 Stipulated Class Members and will result in a fair payment to each Class Member.  The amount that individuals will receive will be determined based upon the number of workweeks CAs who were paid pursuant to the Pay Per Visit Program worked, excluding leaves of absence, so that fairness in payments will result.  The estimated average payment to claimants will be approximately $2,200 (before taxes), which Plaintiff believes will be well-received by the Stipulated Classes.  Lesser Decl. at ¶ 12.  The members of the Rule 23 Class will receive a slightly higher number – 20% higher per work week – because of the California state laws providing additional claims beyond those of the FLSA (specifically the claims accorded as to meal and rest breaks, and accurate, itemized wage statements) which do not exist for the Collective Action Class Members located outside of California.  *See* California Labor Code Sections 201, 202, 203, 218.5, 226, 226.3, 226.7, 510, 512, 1174, 1174.5, and 1194 and Claims under Business and Professions Code Section 17200, *et seq*.

Due to these factors, the result is well within the reasonable standard.  Settlement Class Counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve an alleged "off the clock" policy and failure to pay employees all wages including overtime due under the FLSA and California state law.

Accordingly, the standards for preliminary approval of the Settlement are met in this case and the Court should grant the present motion.

## VI.   NOTIFICATION OF THE SETTLEMENT AND CERTIFICATION TO THE STIPULATED CLASSES ARE APPROPRIATE

Pursuant to the Settlement Agreement, the Parties have stipulated, for settlement purposes only, to the following two classes:

**STIPULATED COLLECTIVE ACTION CLASS:**  Pursuant to 216(b), this class includes:

All clinical associates who are or were employed by Gentiva either in California or at Gentiva's branch locations in Troy, Alabama (Branch No. 2431), Fort Walton Beach, Florida (Branch Nos. 2100 and 2101), Newnan, Georgia (Branch Nos. 2659 and 2655), or Hickory, North Carolina (Branch Nos. 2447 and 947); and paid pursuant to Gentiva's Pay Per Visit Program for work performed at any time between June 11, 2007, through the Date of Preliminary Approval, but not including any of the *Rindfleisch*[5] Plaintiffs.

**STIPULATED RULE CLASS:** Pursuant to Federal Rule of Civil Procedure 23, this class includes:

All clinical associates who are or were employed by Gentiva in California and paid pursuant to Gentiva's Pay Per Visit Program for work performed at any time between June 11, 2006 through the Date of Preliminary Approval, but not including any of the *Rindfleisch* Plaintiffs.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See, e.g., Amchem*, 521 U.S. at 591; *see generally Hanlon*, 150 F.3d 1011; *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d at 137 (citing Manual Fourth). Here, as set forth below, Representative Plaintiff will establish that all the elements of Section 16(b) of the FLSA and Rule 23 are met with respect to the proposed Settlement at the final approval stage; at the preliminary approval stage, the Court need not make formal findings as to the Rule 23(a) and (b) elements, inasmuch as it is now only providing for notice. However, it is worth noting that the requirements are preliminarily met.

     1.  The Elements of Rule 23(a) Are Met[6]

---

[5] "Rindfleisch" refers to *Rindfleisch, et al v. Gentiva Health Services, Inc*., 1:10-cv-03288 (SCJ) pending in the United States District Court for the Northern District of Georgia, a parallel case involving similar claims on behalf of *exempt* Gentiva employees. The carve out for *Rindfleisch* plaintiffs in this case is to avoid any confusion between the actions.

[6] The prerequisites for a conditional certification of a FLSA collective action class are recognized to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. *See*, e.g., *Sliger v. Prospect Mortgage, LLC*, 2011 U.S. Dist. LEXIS 94648, at *9 (E.D. Cal. Apr. 23, 2011) (noting "fairly lenient standard" at conditional certification stage); *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009) (the conditional certification "determination is made based on a fairly lenient standard, and typically results in a 'conditional certification' of a representative class."); *Burk v. Contemporary Home Servs., Inc.*, 2007 U.S. Dist. LEXIS 56395, at *8 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure [and noting that] collective actions are

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *Murillo*, 266 F.R.D. at 474; *Montgomery v. Rumsfeld,* 572 F.2d 250, 255 (9th Cir. 1978).  Here, all four elements are easily satisfied.

a.   Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  While courts have not established a precise threshold for determining numerosity, *Gen. Tel. Co. v. E.E.O.C.,* 446 U.S. 318, 330 (1980), the Ninth Circuit has found that numerosity was met for classes involving as few as 39 class members.  *See, e.g., Jordan v. L.A. County,* 669 F.2d 1311, 1319 (9th Cir. 1982) (finding class sizes of thirty-nine, sixty-four, and seventy-one sufficient to satisfy the numerosity requirement), *vacated on other grounds,* 459 U.S. 810 (1982).  Numerosity is indisputable here; the estimated class size is 1,700.  Lesser Decl. at ¶ 12.  Thus, numerosity is met.

---

not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23"); *Wright v. Linkus Enters.,* 259 F.R.D. 468, 475 (E.D. Cal. 2009) (same); *Adams v. Inter-Con Sec. Sys.,* 242 F.R.D. 530, 535-36 (N.D. Cal. 2007) (same); *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004) (same).  This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class inasmuch as it would follow *a fortiori* from meeting the Rule 23 prerequisites.

b. Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) ("*Dukes*"). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that *all* questions of law and fact be common." *West,* 2006 U.S. Dist. LEXIS 42074, at *11 (citing *Hanlon,* 150 F.3d at 1019). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019; *accord, e.g., Ross v. Citizens Bank, N.A.,* 667 F.3d 900, 908 (7th Cir. 2012) (in context of state wage and hour off-the-clock claim: "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim.") (*citing Dukes*, 131 S. Ct. at 2556).

Here, commonality is met insofar as all claims of the Representative Plaintiff and all members of the Stipulated Rule 23 Class are predicated on core common issues as to (1) whether Gentiva's common Pay Per Visit Program failed to compensate Stipulated Rule 23 Class Members for all hours worked, (2) whether Gentiva failed to provide meal and rest breaks to Stipulated Rule 23 Class Members, (3) whether Gentiva failed to provide accurate, timely, and itemized wage statements, and (4) whether the above practices violate the Labor Code and Wage Orders. *Murillo*, 266 F.R.D. at 475; *Bond v. Ferguson Enters*., 2011 U.S. Dist. LEXIS 6976, at *12-13 (E.D. Cal. Jan. 24, 2011). Where, as here, all class members were subject to the same method of overtime calculation and had similar pay structures, courts have found commonality because the same alleged conduct of defendant would "form[] the basis of each of the plaintiff's claims," *Acosta v. Equifax Info. Servs., L.L.C.,* 243 F.R.D. 377, 384 (C.D. Cal.

2007), and class relief based on commonality is appropriate.  *Ross,* 667 F.3d at 908-10 (finding commonalty in off-the-clock case); *see also Califano v. Yamasaki,* 442 U.S. 682, 701 (1979) (holding that commonality issues of the class "turn on questions of law applicable in the same manner to each member of the class").  This case presents legal issues of the paradigm, particularly in a settlement context, of a common issue sufficient to meet the Rule 23(a)(2) standard.

### c.   Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical."  *Hanlon,* 150 F.3d at 1020.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *see also Hayworth v. Blondery Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").  In *Bond*, the court held that typicality was satisfied because "every class member was paid under the same pay practices as every other class member."  2011 U.S. Dist. LEXIS 6976, at *14.  The same is true here.

In this case, the Representative Plaintiff and all Stipulated Class Members were paid pursuant to Gentiva's uniform Pay Per Visit Program while, as alleged, failed to compensate them for all hours worked including overtime and time worked during missed meal and rest breaks.  Because of these violations, all class members also assert the same claim that Gentiva

failed to provide timely and accurate itemized wage statements.  There is no indication of uniqueness as to either defendant's conduct toward the named plaintiff or the injury suffered as a result of that conduct that might cause the named plaintiff to become "preoccupied with defenses unique to it." *Murillo*, 266 F.R.D. at 475.  Therefore, typicality is satisfied.

2.          <u>Adequacy Under Rule 23(a)(4) And Under Rule 23(g) Are Met</u>

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement is akin to the requirements of Rule 23(g), which are also met here.[7]  In the Ninth Circuit, to resolve the  question of adequacy, "the court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?"  *Murillo*, 266 F.R.D. at 475 (citing *Hanlon,* 150 F.3d at 1020).  These two components are designed to ensure that absentee class members' interests are fully pursued.

Adequacy is easily met here – as noted, proposed Settlement Class Counsel are experienced and competent in complex litigation and have an established track record in employment law, including specifically, litigation and settlement of wage and hour cases.  *See* Lesser Decl. at ¶ 11 & Exhibits E & F.  In turn, the Representative Plaintiff and Settlement Class Counsel have no interests antagonistic to the Stipulated Classes and have demonstrated their allegiance to this litigation through their participation in the litigation and settlement process on behalf of all putative class members.

---

[7] Specifically, Rule 23(g) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class."  Rule 23(g)(2) further states that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Here, the proposed Preliminary Approval Order appoints Settlement Class Counsel as interim lead counsel for pursuing the final approval process.

Having demonstrated that each of the mandatory requirements of Rule 23(a) and (g) are satisfied here, Representative Plaintiff now turns to consideration of the factors which, independently, justify certification of the Stipulated Rule 23 Class under subdivision 23(b)(3).

3.   The Requirements of Rule 23(b)(3) Are Met

Representative Plaintiff's proposed Stipulated Rule 23 Class also meets the requirements of Rule 23(b)(3).  Under 23(b)(3), a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623.  Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *Id.* ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"); *Hanlon,* 150 F.3d at 1022; *Moreno v. AutoZone, Inc.,* 251 F.R.D. 417, 426 (N.D. Cal. 2008) (predominance inquiry satisfied even though court would have to "grapple with  individual issues, such as whether a late paycheck reflects earned or unearned wages").  This case turns on the legality of Gentiva's common Pay Per Visit Program which applied in the same manner to both Representative Plaintiff and the Stipulated Classes.  In such circumstances, common legal questions dominate this litigation such that class-wide adjudication is appropriate, despite the

fact that individualized damages calculations may be necessary. *Murillo*, 266 F.R.D. at 476; *Bond*, 2011 U.S. Dist. LEXIS 6976, at *15-16 (finding Rule 23(b)(3) predominance met where parties, as here, agreed for purposes of settlement); *Blackie v. Barrack,* 524 F.2d 891, 905-09 (9th Cir. 1975); *West*, 2006 U.S. Dist. LEXIS 42074, at *25 ("The predominant issue, and one appropriate for class treatment, is whether defendant's policies, which routinely resulted in employees having to take on-duty meal 'breaks,' were lawful.").   Recent decisions in this area of the law have underscored how predominance is met in wage and hour cases in the face of comprehensive corporate policies. *See, e.g.*, *Ross*, 667 F.3d at 910 ("Ultimately, the glue holding together the Hourly and ABM classes is based on the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation."); *Driver v. Appleillinois, LLC*, 2012 U.S. Dist. LEXIS 27659, at *9 (N.D. Ill. Mar. 2, 2012) ("Although variations among class members likely did exist, perhaps from some limited discretion of branch managers or from the varying potential causes of the improper payment, the class was nevertheless held together by the ultimate question of 'whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation.'"); *Youngblood v. Family Dollar Stores, Inc*., 2011 U.S. Dist. LEXIS 115389, at *17 (Oct. 4, 2011) ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.").

Representative Plaintiff asserts that common questions of law and fact predominate.  All of the claims of the members of the Stipulated Rule 23 Class arise out of common corporate-wide compensation policies which apply to all CAs paid pursuant to the Pay Per Visit Program. As a result of this common policy, Representative Plaintiff alleges that Gentiva failed to

compensate them for all hours worked including meal and rest breaks during which she and CAs worked. Therefore, the Stipulated Rule 23 Class presents common operative facts and common questions of law which predominate over any legal or factual variations in the application of the compensation policies nationwide. *See supra* at Section VI.1.b.  These common questions of law and fact suffice for the Stipulated Rule 23  Class to present a predominance of common issues.

For settlement purposes, superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Gentiva in a single proceeding – obviating the need for multiple, parallel lawsuits.  Moreover, given the commonality of claims relating to Gentiva's standard policy, there would be little or no interest for each class member to proceed with their own case – indeed, the plan of distribution treats all class members equitably by providing payments based upon their number of workweeks completed as a CA.

Accordingly, strictly for the purposes of settlement, there is no danger that individual variations, type or magnitude of damage suffered by individual class members will affect predominance, as the Representative Plaintiff has suffered the same type of damages – and seeks the same type of relief – as all members of the proposed Classes.

Finally, resolution of the claims asserted in this litigation by class settlement is superior to the individual adjudication of class members' claims for relief.  In particular, the settlement provides Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in trial.

Accordingly, in the preliminary approval of settlement posture in which the case now stands, the Stipulated Rule 23 Class is appropriate and should be certified for settlement purposes.

**VII.    THE PROPOSED CLASS NOTICES ARE APPROPRIATE**

1.    The Class Notices Satisfy Due Process Requirements

Due process and judicial interpretation of the notice provisions under California and federal law require notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *Bond*, 2011 U.S. Dist. LEXIS 6976, at *20-21.   The notice plan here entails mailing notices to the last known addresses of all class members based on Gentiva's payroll records and diligent administrative efforts.  The Class Notices[8] are consistent with class certification notices approved by numerous state and federal courts, and are, under the circumstances of this case, the best notice practicable.   Gentiva will provide the Settlement Administrator a database of all Stipulated Class Members, including the number of their compensable work weeks during the relevant periods.  The Settlement Administrator will thereafter finalize the Class Notices and mail them to the Stipulated Class Members.  The Settlement Administrator will endeavor to determine current addresses for Stipulated Class Members whose Notices are returned undelivered, and will re-send Notices to them as appropriate and will also send a reminder postcard to Stipulated Class Members no later than seven days after the second mailing is completely mailed.  The proposed Class Notices and Claims Process satisfy all due process requirements.[9]  *See Eisen*,

---

[8] As noted, a copy of the proposed Class Notices and the Claim Form are attached as Exhibits C and D, respectively to the Declaration of Seth R. Lesser filed herewith.

[9] Each Class member will be mailed a copy of the appropriate Class Notice, which provides a summary of the terms of the Settlement and an explanation of his or her legal rights under the Settlement.  They will also be sent a Claim Form setting forth the number of compensable work weeks they worked during the class period, as well as an estimate of the amount of money they will be allocated based on the distribution plan described in the Settlement Agreement. In addition, Stipulated Rule 23 Class Members

30

417 U.S. 156; *Bond*, 2011 U.S. Dist. LEXIS 6976, at *20-23.

          2.    <u>The Proposed Class Notices Are Accurate and Informative</u>

      The proposed Notices provide clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the settlement will provide Class Members (as well as an explanation of the claims and opt-out processes, as applicable, and the method of allocating and paying out the Net Settlement Fund to Class Members), the procedures and deadlines for opting-in to the Collective Action Class or opting-out of the Rule 23 Class and/or submitting objections, the consequences of taking or foregoing the various options available to Stipulated Class Members, and the date, time and place of the Final Approval hearing.  *See* Manual Fourth at § 21.312.  Pursuant to Fed. R. Civ. P. 23(h), the proposed class notice also sets forth the maximum amount of Attorneys' Fees and Lawsuit Costs which may be sought by the Representative Plaintiff and Settlement Class Counsel.

      The Class Notices also fulfill the requirement of neutrality in class notices.  *See* 3 Newberg § 8.39.  The Notices summarize the proceedings to date and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the Manual's statement that the notice should state essential terms "concisely and clearly… in plain, easily understood language."  *See* Manual Fourth § 21.31.  The Class Notices clearly state that the Settlement does not constitute an admission of liability by Gentiva, and recognize that the Court has not ruled on the merits of the action.  The Notices also state that the final settlement approval decision has yet to be made.  Accordingly, the Class Notices comply with the standards of clarity, fairness, completeness, and objectivity required of a settlement class notice disseminated under authority of the Court.  *See* Fed. R. Civ. P. 23(c)(2), 23(e); 3 Newberg, §§ 8.21, 8.39; Manual Fourth §§ 21.311, 21.312.

---

will be sent an Opt-out Statement, allowing them to request exclusion from the Settlement.  Stipulated Class Members will be allowed 45 days to submit their Claim Form and 30 days to object to the

VIII.   **A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper.   The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement.   At that time, moreover, Settlement Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the Incentive Award to the Representative Plaintiff.   Accordingly, the Parties request that the Court schedule the final fairness hearing for a date no earlier than one hundred fifty-five (155) days, or as soon thereafter as practicable, after entry of the Preliminary Approval Order, to account for the time required by 28 U.S.C. § 1715 and per the terms of the Settlement Agreement.

IX.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Preliminary Approval Order, attached as Exhibit B to Lesser Decl., which, *inter alia*: (1) certifies the Stipulated Collective Action Class and Stipulated Rule 23 Class for settlement purposes only; (2) grants Preliminary Approval of the Settlement; (3) appoints Klafter Olsen & Lesser LLP and Kershaw Cutter & Ratinoff, LLP as Settlement Class Counsel; (4) appoints Plaintiff Catherine Wilkie as Settlement Class Representative; (5) directs distribution of the proposed Notices to all Stipulated Class Members regarding settlement of the claims against Defendant Gentiva Health Services, Inc. on a final and complete basis, in accordance with this motion; and (6) sets a date for the final fairness hearing for a date no earlier than one hundred fifty-five (155) days, or as soon thereafter as practicable, after entry of the Preliminary Approval Order, to account for the time required by 28 U.S.C. § 1715 and per the terms of the Settlement Agreement at the Eastern District of California.

Settlement.  Stipulated Rule 23 Class Members will have 45 days to opt out of the Settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  August 2, 2012

KLAFTER OLSEN & LESSER LLP


By: _____s/Seth R. Lesser_____
        Seth R. Lesser*
        Fran L. Rudich*
        Michael J. Palitz*
        Two International Drive, Suite 350
        Rye Brook, New York 10573
        Telephone:  (914) 934-9200

        C. Brooks Cutter (SBN 121407)
        KERSHAW, CUTTER & RATINOFF, LLP
        401 Watt Avenue
        Sacramento, CA 95864
        Telephone:  (916) 448-9800

        *Attorneys for Plaintiff*

*admitted *pro hac vice*