Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Michael J. Palitz, Esq.
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Phone: (914) 934-9200
Fax: (914) 934-9220

C. Brooks Cutter, Esq. (SBN 121407)
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Phone: (916) 448-9800
Fax: (916) 669-4499

*Attorneys for Plaintiff and Settlement Classes*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE WILKIE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENTIVA HEALTH SERVICES, INC.<br><br>Defendant. | Case No. 2:10-CV-01451-GEB-GGH<br><br>**DECLARATION OF SETH R. LESSER IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND AN INCENTIVE PAYMENT TO THE SETTLEMENT CLASS REPRESENTATIVE PLAINTIFF** |

SETH R. LESSER, an attorney admitted *pro hac vice*, declares, under penalty of perjury that:

1. I am a partner in Klafter Olsen & Lesser LLP, who is, with co-counsel, counsel for Plaintiff and the Settlement Classes in the above-captioned matter. I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, Final Certification of

Settlement Classes, Reimbursement of Attorneys' Fees and Expenses, and an Incentive Payment to the Representative Plaintiff.

2. The scope of the litigation has involved 1,698 Clinical Associates ("CAs") who were paid, at all relevant time periods, pursuant to Defendant Gentiva Health Services, Inc.'s ("Gentiva") Pay Per Visit Program in California or at Gentiva's branch locations in Troy, Alabama; Fort Walton Beach, Florida; Newnan, Georgia; and Hickory, North Carolina.

3. On June 11, 2010, Plaintiff Catherine Wilkie brought this action in this Court asserting claims under the Fair Labor Standards Act ("FLSA"), California Labor Code, California Business and Professions Code, and California Wage Orders on behalf of Gentiva's CAs. Ms. Wilkie alleged violations of the FLSA and California laws claiming that she, and other similarly situated CAs, worked "off-the-clock" under Gentiva's Pay Per Visit Program and that Gentiva had a policy not to record and pay for all hours worked including overtime. Ms. Wilkie also brought California specific claims alleging that Gentiva failed to provide meal and rest breaks and timely, accurate itemized wage statements, and that Gentiva did not pay overtime wages due. After the filing of this lawsuit, five additional opt-ins joined this case alleging the same FLSA violations: Patricia Calhoun (Newnan, Georgia location), Amanda Drum (Hickory, North Carolina location), Paula Eddington (Fort Walton Beach, Florida location), Katherine Beach Sasser (Troy, Alabama location), and Margaret Schonberg (San Diego, California location). The opt-ins and Ms. Wilkie were classified as non-exempt from the FLSA overtime provisions and, therefore, are entitled to overtime wages for all hours worked in excess of 40 in a workweek.

4. Ms. Wilkie performed home health care services as a Registered Nurse for Gentiva in California from June 2008 through August 2009. She provided services at patient visits typically at the patients' homes. Ms. Wilkie testified that she worked approximately 50-

Declaration of Seth R. Lesser

60 hours per week and was not compensated for all hours worked outside of the patient visits and at home while, among other things, completing paperwork, participating in case conferences, and reviewing charting. Ms. Wilkie claimed that Gentiva did not keep proper time records, failed to have in place proper procedures for employees to enter time spent working outside of patient visits, failed to train employees how to record their time, and failed to ensure that employees took meal and rest breaks while out performing services in the field. For example, Ms. Wilkie testified that Gentiva only instructed CAs to enter time spent at patient visits and she was discouraged from entering time spent while working outside of patient visits (i.e. at home). Ms. Wilkie also testified that she worked through meal breaks and did not take rest breaks. Opt-ins Drum from Hickory, North Carolina and Eddington from Fort Walton Beach, Florida provided similar testimony concerning the "off-the-clock" issues, as to their specific locations.

5. Notwithstanding Plaintiff's belief in the claims, which was supported by Ms. Wilkie's testimony, as well as the opt-ins' experiences, issues existed as to Gentiva's defenses to them. Gentiva's 30(b)(6) representatives testified that Gentiva has policies in place to ensure that all hours for non-exempt employees are recorded and paid. For example, Kathleen Shanahan testified that Gentiva trains California employees about meal and rest breaks during orientation and maintains legal policies contained in its employee handbook and policy manual. Ms. Shanahan also testified that "[Gentiva] record[s] all the hours worked in order to track our requirements for overtime." The testimony was supported in part by other documentary evidence including the Pay Per Visit Program stating that "Non-exempt associates are subject to overtime if they work more than 40 hours/week" including time spent working at home and the training materials Gentiva provided to its local branch offices which addressed various labor laws and timekeeping rules. On the other hand, other testimony contradicted these positions

-3-

Declaration of Seth R. Lesser

and Gentiva's records showed little or no support (in Plaintiff's view) for any demonstrable effectuation of overtime being captured, particularly as to the California state law claims. (Other discovery suggested that, in Plaintiff's view, outside of California, Gentiva's policies were inconsistent and inconsistently enforced, most likely the result of Gentiva's accretion of other health care entities in recent years.).

6. In addition to these depositions, discovery included written discovery which involved review and analysis of thousands of pages of documents; production and review of a large amount of electronically stored information ("ESI"); discussions with numerous Class members regarding Gentiva's pay practices; production and review of payroll data to analyze potential damages and timekeeping issues; and review of the applicable case law concerning certification and liability issues involving these wage and hour claims. Class Counsel researched legal issues relating to class and collective action certification, liability, damages, and various discovery matters that arose between the parties. This case was thoroughly litigated, and Class Counsel conducted a detailed investigation of the claims at issue.

7. While the parties were engaged in this intense discovery, Plaintiff offered to attempt to resolve this matter through mediation and Gentiva agreed. Plaintiff believes that the "off-the-clock" issue is a location-specific problem based upon, among other things, rogue supervisors who may have failed to comply with the laws and/or adequately train their employees. Therefore, the parties agreed to discuss resolution of the claims in California on a class-wide basis as well as at the locations in which the opt-ins worked outside of California.

8. The parties retained a highly-qualified and experienced mediator, David Geronemus, Esq. of JAMS, to help settle this matter. Both sides submitted thorough mediation briefs addressing all matters relating to this case including class certification issues, liability matters, and an analysis of the potential damages based upon the payroll information produced

Declaration of Seth R. Lesser

by Gentiva. The parties' major disagreement concerned the claimed number of hours worked "off-the-clock" and overtime wages due to the Classes since Gentiva claimed that (1) Gentiva obtained discovery from multiple CAs indicating that they did not work "off-the-clock" and reported all hours worked; (2) Gentiva's payroll data showed a small amount of overtime hours worked; and (3) Gentiva's part-time employees did not work more than 40 hours per week and therefore had no claim for overtime. While Plaintiff challenged the sufficiency of the records given testimony that CAs did not even know how to record overtime hours and therefore would not have recorded them, the existence of Gentiva's records presented a substantial defense to damages.

9. After the first mediation session, the parties engaged in informal settlement negotiations which included an additional production of payroll data information and discussions concerning same. These discussions helped provide Class Counsel with an ability to assess the potential damages and weigh that against the future risks of further litigation discussed below. The matter was ultimately resolved at the second in-person mediation session on March 7, 2012. Thereafter, the parties negotiated multiple important details for the Proposed Settlement Agreement which was preliminarily approved by the Court on October 5, 2012.

10. Based upon the discovery and multiple mediation sessions, Plaintiff and her counsel, and Defendant and its counsel believe that the Settlement is fair, reasonable and adequate. We believe the Settlement offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether through class certification motions, summary judgment, trial or upon appeals, had the litigation continued. As it relates to class and collective action certification, Plaintiff might have had a difficult time obtaining certification given discovery indicating that the "off-the-clock" issues likely were limited to certain branch locations. Additionally, practices as to CAs was not consistent across

Declaration of Seth R. Lesser

the country and that, inasmuch as Gentiva grew by accretion over the years, different practices were, in fact, in place at different locations across the country. Even if Plaintiff succeeded in obtaining certification of the FLSA claims under the lenient conditional collective action certification standard (29 U.S.C. § 216(b)), Class Counsel believed that keeping such certification through decertification would have been exceedingly problematic. Additional discovery could reveal that the issues affecting Plaintiff and opt-ins may not exist at other locations nationwide. Not only would this discovery be costly and entail numerous depositions located across the United States, but decertification would also result in a dismissal of all of the opt-ins' claims without prejudice, even those in the locations where claims exist (such as those in the Settlement Agreement).

11. Class Counsel's belief is based upon experience in complex wage and hours cases such as this one. I believe that it is fair to say that my firm is recognized as a leader in wage and hour class action litigation on behalf of employees. We, and our co-counsel at the Kershaw Cutter & Ratinoff firm LLP, relied on our expertise in complex wage and hours cases such as this one to litigate this case efficiently and effectively. In recent years, my firm has successfully litigated to conclusion over two dozen wage and hour cases and settlements that constitute over $100 million in value. This includes *Stillman v. Staples, Inc.*, 07-cv-849 (D.N.J.) (*"Staples"*), a FLSA wage and hour case that the Klafter Olsen & Lesser firm ultimately successfully tried to a jury verdict on behalf of a collective of 342 opt-ins and which case is one of the rare FLSA misclassification cases that has, at least in recent years, been successfully tried to a jury verdict for plaintiffs and which resulted in a $42 million settlement. Other cases where we have been lead counsel have resulted in multi-million dollar awards (as well as smaller awards in other cases) and includes the largest wage and hour overtime settlements in the District of New Jersey (the *Staples* litigation), the District of Rhode Island

Declaration of Seth R. Lesser

(*Nash v. CVS*, 09-cv-079-M-LDA (D.R.I.) ($34 million settlement)), the District of Massachusetts (*Caissie v. BJ's Wholesale Club*, 08-cv-30220 (D. Mass.) (MAP) ($9.3 million settlement)), and the federal courts in Pennsylvania (*Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658 (M .D. Pa. Jan. 7, 2013) ($20.9 million settlement)). In addition, given our experience, Class Counsel was able to litigate this matter efficiently without having to "reinvent the wheel."

12. If this case proceeded through litigation, there is a chance that Plaintiff and the Classes would not obtain any recovery based upon the various defenses relating to class certification and liability that Gentiva has asserted.

13. On behalf of Plaintiff and the Classes, I believe it is fair to say – indeed, I believe this cannot fairly be gainsaid – that the proposed Settlement is the product of two fully informed sides negotiating intensely at arms-length. The $5,000,000 Total Settlement Amount is a substantial result for a wage and hour class of 1,698 individuals and will undoubtedly result in significant payments to Settlement Class members. The estimated average payment to claimants will be approximately $2,200 (before taxes), which we believe will be well-received by the Settlement Classes. There is not a single objector to any part of the Settlement and, in total, a mere five opt-outs. Accordingly, Class Counsel believe that this is a fair and reasonable Settlement which is supported by the reaction of the Settlement Classes.

14. Class Counsel has fully advised Representative Plaintiff of the Settlement Agreement, who approves of and consents to the Settlement.

15. From inception, my firm has spent a total number of 830.01 professional hours in prosecuting this matter. The total lodestar amount for professional time is $442,948.50. The following chart provides a breakdown of my firm's lodestar computation:

Declaration of Seth R. Lesser

| PROFESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Jeffrey Klafter | .6 | $780 | $468.00 |
| Seth Lesser | 184.0 | $750 | $138,000 |
| Fran Rudich | 179.85 | $650 | $116,902.50 |
| Kyra Hild | 12.4 | $350 | $4,340 |
| Michael Palitz | 349.0 | $390 | $136,110 |
| Rachel Aghassi | .3 | $350 | $105 |
| Rachel Berlin | 35.0 | $350 | $12,250 |
| Ruth Arias | 9.0 | $250 | $2,250 |
| Doron Levin | 55.86 | $550 | $30,723 |
| Victoria Waciura | 4 | $450 | $1,800 |
| **TOTAL:** | **830.01** | | **$442,948.50** |

Class Counsel's rates, between $250 and $780 per hour, are reasonable based on each attorney's position, experience level, location, stature and reputation. These rates are what our firm charged paying clients for our services and is in line with rates charged by counsel who litigate high stakes class and collective action wage and hour cases, and thus reflect the prevailing rates in the communities in which we practice. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

16. From inception to present, my firm has expended a total of $32,757.33 in unreimbursed costs and expenses in connection with the prosecution of this action. The following chart provides a breakdown of my firm's expenses in this matter:

Declaration of Seth R. Lesser

| KOL EXPENSES | |
|---|---|
| From Inception to February 28, 2013 | |
| Court Fees | $740 |
| Court Reporters | $4,838.99 |
| Federal Express and Postage | $182.01 |
| LexisNexis | $3,102.81 |
| Photocopies | $18.00 |
| Professional Mediation Services | $14,789.55 |
| Telephone | $75.30 |
| Transportation, Meals, Hotel | $9,010.67 |
| **TOTAL:** | **$32,757.33** |

These expenses are reasonable given the full scope of the litigation to date, are documented on the books of Klafter Olsen & Lesser LLP, and are reasonable in relation to the Settlement Fund and should be awarded.

17. Since inception, co-counsel, Kershaw Cutter & Ratinoff LLP, has devoted 146.9 professional hours to this case, representing $91,842.50 in dollars-times-hours "lodestar," and has incurred $9,289.67 in out-of-pocket expenses. *See* Declaration of Brooks Cutter at ¶¶ 6, attached as Exhibit D hereto. Together, Class Counsel have a lodestar of $534,791 and expenses totaling $42,047.

18. Class Counsel will continue to incur additional attorney hours in connection with Final Approval of the Settlement. In addition to incurring hours in connection with the Final Approval Hearing, based on their experience with numerous other settlements of comparable cases, Class Counsel anticipates that they will spend a substantial amount of additional time

Declaration of Seth R. Lesser

over the next several months responding to inquiries from Class members, interacting with the Claims Administrator, and generally shepherding implementation of the Settlement. Beyond that, Class Counsel does not intend to apply for reimbursement of additional fees, substantial as they may be, incurred after Final Approval. However, for purposes of evaluating the reasonableness of the 25% fee request, and performing the lodestar cross-check, it is appropriate to consider the additional fees that Class Counsel will incur. Class Counsel conservatively estimates that, at minimum, additional fees will be $21,391.64. Based upon experience, these additional tasks could easily reach into a hundred or more additional hours. Thus, whereas the current combined lodestar is $534,791, the actual lodestar will be at least $556,182.64.

19. Attached as Exhibit E hereto is the Declaration of Jason Zuena, Senior Director of Operations for the Garden City Group, Inc. ("Garden City Group"), appointed by the Court to be Claims Administrator. Mr. Zuena's Declaration sets forth the notice that was effectuated pursuant to the Court's direction in the Order preliminarily approving the Settlement and the response of the collective action and class members that comprise the Settlement Classes.

20. As set forth in Mr. Zuena's Declaration ¶¶ 3-9, Garden City Group has complied with providing notice to the Classes pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, including the establishment of a toll-free telephone line and the mailing of the Notice to the Classes. Garden City Group has taken care of such matters as the notifications required under the Class Action Fairness Act, re-mailings, skip-tracings, inquiries from Class members (still ongoing), resolving disputed dates of employment (still ongoing), and deficiency notifications (still ongoing). Zuena Declaration ¶¶ 3-9, 12. As of February 25, 2013, Garden City Group received 785 claim forms from Class members. Zuena Declaration ¶ 12.

Declaration of Seth R. Lesser

21. Notice has been given to the Class in accordance with the Settlement Agreement and the Preliminary Approval Order. Zuena Declaration ¶¶ 3-9. To date, not a single Class member out of 1,698 has objected. Zuena Declaration ¶¶ 10-11. The reaction of the Settlement Classes has been overwhelmingly positive.

22. The Settlement Agreement states that for claims to be effective, the returned Claim Form must be postmarked by January 3, 2013. The Claims Administrator has continued to receive Claim Forms after the January 3, 2013 deadline. The current claims rate is 46%, which Class Counsel expects to increase as the parties have agreed that it is practical and fair to continue to accept late claims up until the date of the Final Approval Hearing on March 25, 2013.

23. Garden City Group anticipates that the total cost of notice and administration to be $128,400. Zuena Declaration ¶ 13. This number is, in my experience, reasonable in light of the work that is required for the notice and administration of this case, and should be approved.

24. The Settlement also provides an incentive award of $5,000 to Catherine Wilkie. Ms. Wilkie consulted regularly with Class Counsel, provided critical information to help prosecute these claims, was a valuable factual resource, searched for and produced documents, sat for a full-day deposition, and undertook to protect the best interest of the Classes in consummating the proposed Settlement. Further, Ms. Wilkie stepped forward to bring a claim notwithstanding the possibility of her being "blackballed" in her industry. Class Counsel believes she materially assisted the prosecution of this litigation and that the award is reasonable and warranted under the circumstances and in conformity with governing precedent.

25. Annexed hereto as Exhibit A is a true and correct copy of the executed Settlement Agreement.

Declaration of Seth R. Lesser

26. Annexed hereto as Exhibit B is a true and correct copy of the Court's October 5, 2012 Order Preliminarily Approving Settlement.

27. Annexed hereto as Exhibit C is the firm resume of Klafter Olsen & Lesser LLP.

28. Annexed hereto as Exhibit D is the Declaration of Brooks Cutter, Esq. along with the firm resume of Kershaw, Cutter & Ratinoff, LLP attached thereto.

29. Annexed hereto as Exhibit E is the Declaration of Jason Zuena of the Garden City Group.

30. Attached as Exhibit F is a Proposed Final Approval Order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 1st day of March, 2013, in Rye Brook, New York.

                                                    s/Seth R. Lesser
                                                    Seth R. Lesser